## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

CROSS RIVER BANK           |
                        |
       Plaintiff,            |
      v.                       |     Case No:   8:21-cv-3210-TJS
                        |
3 BEA'S ASSISTED LIVING LLC,    |
a Maryland Limited Liability Company,   |
a/k/a THREE BEA'S ASSISTED LIVING,   |
CONNIE STEWART, and         |
DAVID STEWART JR.           |
                        |
       Defendants.         |
_____ |

## MEMORANDUM OF LAW IN SUPPORT OF
## CROSS RIVER BANK'S MOTION FOR SUMMARY JUDGMENT

Dated:   November 11, 2022

Blake W. Frieman, MD. Fed. No. 20959
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: 703.525.4000 | Fax: 703.525.2207
bfrieman@beankinney.com

JONATHAN J. LERNER, ESQ.
*Pro Hac Vice*
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200 | Fax: 973.364.1403
JLerner@starrgern.com

*ATTORNEYS FOR CROSS RIVER BANK*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

LEGAL ARGUMENT........................................................................................................8

I.   THE SUMMARY JUDGMENT STANDARD ....................................................8

II.   DEFENDANTS BREACHED THE NOTE AND THEREFORE
SUMMARY JUDGMENT SHOULD BE GRANTED
AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM ............................................8

III.  SUMMARY JUDGMENT SHOULD BE GRANTED
ON PLAINTIFF'S UNJUST ENRICHMENT CLAIM ...................................................10

IV.  SUMMARY JUDGMENT SHOULD BE GRANTED
ON PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM .......................................12

V.  SUMMARY JUDGMENT SHOULD BE GRANTED
ON PLAINTIFF'S CONVERSION CLAIM ...................................................................13

VI.  SUMMARY JUDGMENT SHOULD BE GRANTED
ON PLAINTIFF'S FRAUD/MISREPRESENTATION CLAIM .....................................15

VII.  SUMMARY JUDGMENT SHOULD BE GRANTED ON
PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM ................................20

VIII.  SUMMARY JUDGMENT SHOULD BE GRANTED ON
PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIM ..........................................22

CONCLUSION................................................................................................................26

i

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

Allied Investment Corp. v. Jasen,
  354 Md. 547 (1999) ..........................................................................................13,14

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)..............................................................................................8

Baney Corp. v. Agilysys NV, LLC,
  773 F.Supp. 2d 593 (D. Md. 2011)......................................................................15

Barufaldi v. Ocean City Chamber of Commerce,
  196 Md. App. 1 (Md. Ct. Spec. App. 2010) ...........................................................9

Benson v. State,
  389 Md. 615 (2005) .............................................................................................12

Berry & Gould, P.A. v. Berry,
  360 Md. 142 (2000) .............................................................................................11

Bouchat v. Baltimore Ravens Football Club, Inc.,
  346 F.3d 514 (4th Cir. 2003) .................................................................................8

Bourgeois v. Live Nation Entm't, Inc.,
  430 Md. 14 (Md. 2013)........................................................................................12

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986).............................................................................................8

County Commissioners v. J. Roland Dashiell & Sons, Inc.,
  358 Md. 83 (2000) ...............................................................................................11

CTI/DC, Inc. v. Selective Ins. Co. of America,
  392 F.3d 114 (4th Cir. 2004) .................................................................................8

Darcars Motors of Silver Springs, Inc. v. Borzym,
  379 Md. 249 (Md. 2004)..................................................................................13,14

Dierker v. Eagle National Bank,
  888 F.Supp. 2d 645 (D. Md. 2012).......................................................................20

Fick v. Perpetual Title Co.,
  115 Md. App. 524 (1996), cert. denied, 347 Md. 153 (1997) ..................................25

Frain v. Perry,
    92 Md. App. 605, <u>cert.</u> <u>denied</u>, 328 Md. 237 (1992) ................................................25

Hill v. Cross Country Settlements, LLC,
    402 Md. 281 (2007) ................................................................................................11

Hoffman v. Stamper,
    385 Md. 1 (2005) ....................................................................................................15

Jay Dee/Mole Joint Venture v. Mayor of Baltimore,
    725 F.Supp. 2d 513 (D.Md. 2010) ..........................................................................9

Jenkins v. Karlton,
    329 Md. 510 (Md. 1993) .........................................................................................9

Martens Chevrolet, Inc. v. Seney,
    292 Md. 328 (1982) ................................................................................................20

Messe v. Messee,
    212 Md. App. 359 (2013) .......................................................................................25

My National Tax & Insurance Services, Inc. v. H & R Block Tax Services, Inc.,
    839 F.Supp. 2d 816 (D. Md. 2012) ........................................................................20

Nails v. S & R, Inc.,
    334 Md. 398 (Md. 1994) .......................................................................................15

Oles Envelope Corp. v. Oles,
    193 Md. 79 (1949) .................................................................................................25

State, Use of Employment Sec. Bd. v. Rucker
    211 Md. 153 (1956) ...............................................................................................12

Taylor v. NationsBank, N.A.,
    365 Md. 166 (Md. 2001) .........................................................................................9

Tracey v. First Amended Title Ins. Co.,
    935 F.Supp. 2d 826 (D. Md. 2013) ........................................................................12

Ver Brycke v. Ver Brycke,
    379 Md. 669 (2004) ...............................................................................................12

Wellcraft Marine Corp. v. Roader,
    314 Md. 186 (1988) ...............................................................................................23

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................16

Fed. R. Civ. P. 56 ...............................................................................................1

The Maryland Uniform Fraudulent Conveyance Act ("MUFCA"),
    at Md. Commercial Law Code Ann. § 15-206 ............................................22

The MUFCA, at Md. Commercial Law Code Ann. § 15-203 ..............................22,24

The MUFCA, at Md. Commercial Law Code Ann. § 15-204 ..............................22

The MUFCA, at Md. Commercial Law Code Ann. § 15-209 ..............................24

**Other Authorities**

1 Fowler V. Harper et al., <u>The Law of Torts</u>, § 2.13, at 2:56 (3d ed. 1986) ...............................14

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") ..........................3,4,6

Pursuant to Fed. R. Civ. P. 56, Plaintiff Cross River Bank ("Cross River") respectfully moves that the Court enter summary judgment against Defendants.

## PRELIMINARY STATEMENT

This is an action on behalf of Cross River to recover over $1,706,117 in funds issued to 3 Bea's Assisted Living, LLC ("3 Bea's") in connection with a Paycheck Protection Program ("PPP") Loan Application. See Affidavit of Counsel ("Counsel Aff."), **Ex. 1**, Amended Complaint. The PPP loan application was for $20,680, based on the monthly payroll of 3 Bea's' total of 8 employees, $8,272, as stated by 3 Bea's sole and managing member, defendant Connie Stewart, while entering the application online on or about April 23, 2020. See Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment Pursuant to Local Rule 56.1 ("Statement of Undisputed Material Facts"), ¶¶ 5-9 and cited exhibits. See also Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 14, and Affidavit of Cross River Bank   ("Cross River Aff."), **Ex. 1**, Loan Application/Loan Documents, Electronic Record of Loan Application, Loan Application Information, Terms and Conditions, and Borrower Application Form.

On the loan documents, Connie Stewart falsely certified that 3 Bea's was eligible for a PPP loan in the amount of $1,706,117.   However, her company, 3 Bea's, was at most qualified for a loan of $20,680, i.e. 2.5 times the monthly payroll amount.   She falsely certified on various pages of the documents that 3 Bea's was eligible for a PPP loan in the amount of $1,706,117.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Resolution to Borrow, p. 1 (where she initialed and certified that 3 Bea's was eligible for a PPP loan of $1,706,117), U.S. Small Business Settlement Sheet ("Settlement Sheet") (where she certified that the U.S. Small Business Administration Note ("Note") amount was $1,706,117), and Note (which she executed in an amount of $1,706,117).   As a result of the foregoing, Cross River  funded the misrepresented

loan amount of $1,706,117 by wire to the 3 Bea's account at Bank of America on May 7, 2022. See Counsel Aff., **Ex. 4**, relevant portion of 3 Bea's Assisted Living LLC account x1025 May 2020 bank statement.   Due to her false statements in certifying on various loan documents that 3 Bea's was eligible for a PPP loan in the amount of $1,706,117, Connie Stewart and 3 Bea's have come into possession of money that they had no right to.

3 Bea's and Connie Stewart have admitted they have not returned the funds and have made none of the payments required under the Note, despite demand from Cross River.   See Counsel Aff., **Ex. 1,** Amended Complaint, ¶¶ 39 and 41, **Ex. 2**, Answer to Amended Complaint, ¶¶ 39 and 41, and **Ex. 3**, Connie Stewart and 3 Bea's' Answers to Cross River Bank's Interrogatories, Ans. No. 13.

Cross River respectfully submits that it is entitled to summary judgment holding that (1) 3 Bea's and Connie Stewart breached the Note; (2) 3 Bea's and Connie Stewart wrongfully retained the funds despite demand for them; (3) 3 Bea's and Connie Stewart have been unjustly enriched as a result of their retaining the funds wrongfully obtained; (4) 3 Bea's and Connie Stewart converted the funds to their own use; (5) 3 Bea's and Connie Stewart obtained the funds through fraud by misrepresenting the loan amount 3 Bea's was eligible for on the loan documents and loan application and certifying to that amount on various loan documents; (6) 3 Bea's and Connie Stewart obtained the funds through negligent fraud by misrepresenting the loan amount 3 Bea's was eligible for on the loan documents and loan application and certifying to that amount on various loan documents; (7) 3 Bea's fraudulently conveyed $749,000 of PPP loan funds received for Connie Stewart's purchase of residential real estate in Brandywine, Maryland, Connie Stewart, then fraudulently conveyed the real estate to her sons Burton Sherbert and David Stewart for no consideration, and finally Burton Sherbert and David Stewart, Jr. fraudulently conveyed a fifty

percent (50%) interest in the real estate to Connie Stewart.

## STATEMENT OF FACTS

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a federal law enacted in or around March 2020 and designed to provide assistance to businesses suffering from the economic effects cause by the COVID-19 pandemic for employee job retention and certain other expenses, through the PPP.   PPP loans are administered by the United States Small Business Administration ("SBA").   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 8.

In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.   The PPP loan application requires the business through its authorized representative to acknowledge the program rules and make multiple affirmative certifications on the Borrower Application Form, and on other loan documents, as well as to execute a promissory note and other documents, in order to be eligible to obtain the PPP loan.   PPP loan applications are processed by a participating financial institution, such as plaintiff Cross River Bank.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 9.

PPP loan proceeds may be used by the business for certain permissible expenses, including payroll costs, interest on mortgages, rent, utilities and other listed expenses.   See Counsel Aff., **Ex. 1,** Amended Complaint, ¶ 10.

On the Borrower Application Form, the business, through its authorized representative, must state, among other things, its average monthly payroll expenses and the number of employees.   These figures are used to calculate the amount of money the business is eligible to receive under the PPP.   In addition, businesses applying for a PPP loan must provide documentation supporting their payroll expenses, such as tax forms and bank statements.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 11.

As indicated in bank records subpoenaed from Bank of America, Connie Stewart's actions on the date the $1,706,117 of the Cross River funds were wired into 3 Bea's primary bank account x1025 make it clear she knew the funds were well in excess of what 3 Bea's qualified for (only $20,680 per p. 1 of her application), and that she intended to spend the funds on herself, her family members, and other entities she controlled. Among other things, on May 7, 2020, the day of the wiring of the $1,706,117 of funds into 3 Bea's primary bank account x1025, Connie Stewart immediately transferred $1,100,000 to three other bank accounts, none of which belonged to 3 Bea's Assisted Living, LLC, and issued an additional $400,000 to herself in the form of two large cashier's checks issued to "Connie B. Stewart" in the amounts of $250,000 and $150,000.   See Counsel Aff., **Ex. 4**.   All told, on May 7, 2020, the day the money was received from Cross River, $1,500,000 was either transferred to non-3 Bea's bank accounts or withdrawn in the form of cashier's checks payable to Connie Stewart.   See Id.   Four days later, on May 11, 2020, more inappropriate transfers were made, and over the next year or so, even more transfers were made, combined with massive expenditures on non-qualifying expenses, including, but not limited to, purchase of an expensive home in Brandywine, Maryland for $749,000.   Even if the loan application was legitimate, which it clearly was not, PPP loan funds may only be used for payroll, mortgage or rent payments, utilities, and limited other expenses, and only on behalf of the borrowing entity.   See Interim Final Rule Relating to Implementation of Sect. 1102 and 1106 of the CARES Act, 85 FR 20811 (April 15, 2020).

As indicated above, on May 7, 2020, $250,000 was transferred from 3 Bea's primary bank account x1025 to Connie Stewart's personal bank account; a total of $750,000 was transferred from 3 Bea's bank account x1025 to another Connie Stewart entity, Diane's Plea, Cure Cancer Foundation Inc.'s ("Diane's Plea") bank account x1091 in three separate transactions of $250,000,

$400,000, and $100,000, with Connie B. Stewart listed as Diane's Plea's resident agent and with her former home address appearing on Diane's Plea's bank statements; $100,000 was transferred from 3 Bea's bank account x1025 to her son Burton S. Sherbert's personal bank account x4724; and two large cashier's checks were issued to "Connie B. Stewart" in the amounts of $250,000 and $150,000.   See Counsel Aff., **Ex. 4**, and **Ex. 8**.

Four days later, on May 11, 2020, $241,555.25 was transferred from 3 Bea's bank account x1025 to a new bank account x9366 that appears to have been opened with those funds in the name of "Three Bea's Incorporated" instead of borrower 3 Bea's Assisted Living, LLC.   See Counsel Aff., **Ex. 4**, and **Ex. 9**.   Also on May 11, 2020, one of the two cashier's checks payable to Connie B. Stewart in the amount of $150,000 was deposited to open a second new bank account x9379 in the name of Three Bea's Incorporated.   See Counsel Aff., **Ex. 4**.   Also on May 11, 2020 a third Three Bea's Incorporated checking account x3268 was opened with a $750,000 "Counter Credit" from cashier's checks payable to Connie Stewart.   See Counsel Aff., **Ex. 9**.   Importantly, Three Bea's Incorporated was only incorporated on the same day as the deposits, May 11, 2020, with Connie Stewart listed as sole incorporator and as the resident agent.   See Counsel Aff., **Ex. 10**.

This whirlwind of funds transfers of about $1.7 Million between May 7, 2020 and May 11, 2020, creation of a new Three Bea's entity on May 11, 2020, and creation of three brand new bank accounts for the new Three Bea's entity, Three Bea's Incorporated, all on May 11, 2020, demonstrates Connie Stewart's intentional desire to misappropriate, convert, and conceal the "loan funds," and then use them for herself, her family members, and other entities she controlled.   Even if this was a legitimate PPP Loan, which it was not, the PPP Rules only permit PPP loan funds to be used for employee wages, mortgage payments, rent payments, utility payments and certain limited other expenditures, and only by the entity that applied for the funds, not by other entities

and people.   See Interim Final Rule Relating to Implementation of Sects. 1102 and 1106 of the CARES Act, 85 FR 20811 (April 15, 2020).

Despite Cross River's requesting return of the funds, including numerous unanswered communications, Connie Stewart failed and refused to return the funds.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 41, **Ex. 2**, Answer to Amended Complaint, ¶ 41, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 13.   On or about May 20, 2020, Cross River issued a recall request of the funds to Bank of America, the bank in which 3 Bea's account x1025 was located, but ultimately only $4,717.53 was recovered.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 25 and 39, and Cross River Aff., **Ex. 2**, Indemnification Agreement issued to Bank of America.

More rampant and aggressive transfers accompanied by impermissible spending of the funds continued over the next year from accounts in the names of Connie Stewart, Three Bea's Incorporated, Burton Sherbert, Diane's Plea, and others.   Another glaring example of misuse and refusal to return the funds is Connie Stewart's purchase of an expensive $749,000 new home for herself located in Brandywine, Maryland ("Brandywine Property") on September 25, 2020.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 80-82, **Ex. 2,** Answer to Amended Complaint, ¶¶ 80-82 (where defendants "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House" and "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House with funds originating from the PPP funds."), **Ex. 5**, Deed for Brandywine Property dated September 25, 2020 and related purchase documents, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 5, (where Connie Stewart admits she "paid $749,000 to purchase the Brandywine Property, which is where a majority of the funds were used.").   She paid for the Brandywine Property using Three Bea's Incorporated's account x3268.   See Counsel Aff., **Ex. 9**,

6

relevant portion of Three Bea's Incorporated x3268 September 2020 bank statement.

About two months after the house purchase, Connie Stewart conveyed title to the Brandywine Property to her sons, Burton Sherbert and David Stewart, Jr. for no consideration by grant deed dated December 4, 2020.  See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 83, **Ex. 2**, Answer to Amended Complaint, ¶ 83, and **Ex. 6**, December 4, 2020 Grant Deed.  About nine months later, Burton Sherbert and David Stewart, Jr. conveyed title to the property to Connie Stewart and David Stewart, Jr. by grant deed on August 30, 2021.  See Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 85, **Ex. 2**, Answer to Amended Complaint, ¶ 85, and **Ex. 7**, August 30, 2021 Grant Deed.  Such rapid transfers are, on their face, indicia of a desire to conceal the ownership of the property and hinder creditors such as Cross River.

In accordance with the terms of the Note, Cross River's current damages are in the amount of $1,829,358.20.[1]

|   | $1,706,117.00 | (Amount funded) |
|---|---|---|
| + | $      42,652.92 | (Interest at 1% from 4/30/20-10/31/22) |
|   | $     85,305.85 | (5% Late Fee) |
|   | $1,834,075.70 | (Amount Due/Damages) |
| - | $       4,717.53 | (Amount recalled from BofA in July 2020) |
|   | $1,829,358.20 | (Amount Due/Damages after deduction) |

<u>See</u> Statement of Undisputed Material Facts, ¶¶ 2,8 and Cross River Aff., **Ex. 1**.

In addition to the foregoing, Cross River hereby incorporates by reference the Statement of Undisputed Material Facts, and cited exhibits.  For the reasons set forth above and the legal standards that follow, we submit that summary judgment is certainly appropriate and should be granted.

---

[1]  Added to these damages must be an award of reasonable counsel fees and costs, pre-and post-judgment interest, if applicable, and any other special damages or equitable remedies that may be awarded.   In addition, interest and penalties (late fees) continue to accrue. Reimbursement for reasonable attorneys' fees and costs are expressly required under the Note.   See Cross River Aff., Ex. 1, Loan Application/Loan Documents, Note, p. 5.

## **LEGAL ARGUMENT**

### I.     **THE SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where there is no genuine dispute of any material facts and the moving party is entitled to judgment as a matter of law.   See F.R.C.P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   F.R.C.P. 56(c); Celotex at 322-323; see also Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (recognizing the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial).   If the material facts are not in dispute and the Plaintiff is entitled to judgment as a matter of law, judgment must be entered in favor of the Plaintiff.   See Anderson v. Liberty Lobby, Inc., *supra*, 477 U.S. at 250; see Celotex Corp., *supra*, 477 U.S. at 322.

### II.    **DEFENDANTS BREACHED THE NOTE AND THEREFORE SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM**

The Court should enter summary judgment as to liability in favor of Cross River because there are no disputes as to the genuine issues of material fact and as a matter of law, Plaintiff is entitled to judgment as 3 Bea's and Connie Stewart have breached the Note causing Cross River significant damages.

Under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."   CTI/DC, Inc. v. Selective Ins. Co. of America, 392 F.3d 114, 123 (4th Cir. 2004).   The elements of a breach of

contract are (1) a contractual obligation and (2) a material breach of that obligation.  See Taylor v. NationsBank, N.A., 365 Md. 166, 175 (Md. 2001).   A breach is material where it renders any subsequent performance "different in substance from that which was contracted for," or where it alters the purpose of the contract in a vital way.   See Jay Dee/Mole Joint Venture v. Mayor of Baltimore, 725 F.Supp. 2d 513, 516 (D.Md. 2010); Barufaldi v. Ocean City Chamber of Commerce, 196 Md. App. 1, 23 (Md. Ct. Spec. App. 2010).

A "promissory note is, as between the parties to it, a contract, to which the basic rules of contract construction apply."   Jenkins v. Karlton, 329 Md. 510, 525 (Md. 1993).

Connie Stewart on behalf of herself and 3 Bea's signed the Note in the amount of $1,706,117 on May 5, 2020.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 6.   Connie Stewart and 3 Bea's admit signing the Note in their Answer, and Connie Stewart admits signing the Note in her Answer to Cross River's Interrogatory No. 20.   See Counsel Aff., **Ex. 2**, Answer, ¶ 18, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 20.[2]

The Note expressly provides that "[a]ll individuals and entities signing this Note are jointly and severally liable."   See Statement of Undisputed Material Facts, ¶ 18 and cited exhibits.   The Note expressly states that "[i]n return for the Loan, Borrower promises to pay to the order of Lender the amount of one million, seven hundred six thousand, one hundred seventeen Dollars, interest on the unpaid principal balance, and all other amounts required by this Note."   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 1.   The Note requires 1 percent

---

[2] Connie Stewart and 3 Bea's also admitted signing the other loan documents on May 5, 2020, including the Borrower Application Form, the Resolution to Borrow, the Settlement Sheet, as well as the Note.   See Counsel Aff., **Ex. 2**, Answer to Amended Complaint, ¶¶ 14, 15, 17 and 18, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. Nos. 16, 17, 18, 19 and 20.   In addition, Connie Stewart and 3 Bea's admitted they submitted an online application for a PPP loan.   See Counsel Aff., **Ex. 2**, Answer to Amended Complaint, ¶ 12.

(1%) interest per year and 5 percent (5%) late fees.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 2.

In reliance on the Note, Cross River wired $1,706,117 into 3 Bea's Bank of America account x1025 on May 7, 2020.   See Counsel Aff., **Ex. 4,** relevant portion of 3 Bea's Assisted Living, LLC account x:1025 May 2020 bank statement.   3 Bea's and Connie Stewart admitted that Cross River funded the loan in the amount of $1,706,117.   See Counsel Aff., **Ex. 1,** Amended Complaint, ¶¶ 23 and 24, and **Ex. 2**, Answer to Amended Complaint, ¶¶ 23 and 24.   Mutual assent (offer and acceptance), an agreement definite in terms, and consideration (Connie Stewart's and 3 Bea's execution of the Note in exchange for the funds) were all present to create a contractual obligation.

3 Bea's and Connie Stewart have admitted receiving Cross River's requests for return of the funds. They have failed to return the funds and make any required payments in accordance with the terms of the Note.   See Statement of Undisputed Material Facts, ¶¶ 21-24 and cited exhibits.   The failure to return the funds as well as the failure to make payments is a clear breach of the contract.

Accordingly, Cross River is entitled to summary judgment on its claim for breach of contract which includes damages to date in the amount of $1,829,358.20 as identified above.   The plain language of the Note, coupled with 3 Bea's and Connie Stewart's own admissions that they received the funds, yet failed to repay the Note, proves their breach of the Note.   It is respectfully requested that the Court grant summary judgment on its breach of contract claim.

## III.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S UNJUST ENRICHMENT CLAIM

To sustain a claim for unjust enrichment, a plaintiff must establish a benefit conferred upon the defendant by the plaintiff, appreciation or knowledge of the benefit by the defendant, and

acceptance or retention of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment or the return of the money.   The doctrine of unjust enrichment is defined by three elements: (1) "[a] benefit conferred upon the defendant by the plaintiff", (2) "[a]n appreciation or knowledge by the defendant of the benefit", and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."   See Hill v. Cross Country Settlements, LLC, 402 Md. 281, 294 (2007), quoting Berry & Gould, P.A. v. Berry, 360 Md. 142, 151-152 (2000), quoting County Commissioners v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 95 n.7 (2000).   "A person who received a benefit by reason of infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment."   Hill, *supra*, 402 Md. at 296.

Here 3 Bea's and Connie Stewart have admitted that they received the funds.   See Statement of Undisputed Material Facts, ¶ 20.   Cross River has also proven they received the funds through the 3 Bea's Assisted Living, LLC bank account x1025.   See Counsel Aff., **Ex. 4**, relevant portion of 3 Bea's Assisted Living, LLC account x:1025 May 2020 bank statement.   3 Bea's and Connie Stewart have admitted they have not returned the funds, and have not made payments pursuant to the Note.   See Statement of Undisputed Material Facts, ¶¶ 22 and 24 and cited exhibits.   By failing to return the $1,706,117 issued to them despite Cross River's demands for repayment, 3 Bea's and Connie Stewart were unjustly enriched.   3 Bea's and Connie Stewart were never legally entitled to receive funds in that amount; yet they retained them.

Cross River has established that 3 Bea's and Connie Stewart received a benefit: $1,706,117 in funds that they applied for despite knowing they were not eligible for a PPP loan in that amount; and they had clear knowledge of the benefit, as Connie Stewart transferred $1.5 Million on the

same day the funds were wired into 3 Bea's bank account.   Over approximately the next year, more funds were transferred and spent.   Finally, the circumstances make it inequitable for 3 Bea's and Connie Stewart to retain the benefit without return of the money.   Therefore, it is respectfully submitted that summary judgment be granted on Cross River's unjust enrichment claim.

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM

Under Maryland law, an action for money had and received has long been available to recover money obtained by fraud or false pretense.   See Tracey v. First Amended Title Ins. Co., 935 F.Supp. 2d 826, 846 (D. Md. 2013), citing Bourgeois v. Live Nation Entm't, Inc., 430 Md. 14, 48 (Md. 2013).   It is also available to recover money paid under mistake of fact or law, as well as paid upon an unexecuted illegal contract or paid upon an executed illegal contract.   See Bourgeois, *supra*, 430 Md. at 48.

"An action for money had and received is one of what have been referred to as the 'common counts' or 'common money counts' that developed under English common law as a branch of the common law writ of assumpsit – *indebitatus assumpsit.*"   Tracey, *supra*, 935 F.Supp. 2d at 846, quoting Bourgeois, *supra*, 430 Md. at 45.

The Court of Appeals of Maryland in Bourgeois explained:

The action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit. *Ver Brycke v. Ver Brycke, 379 Md. 669, 698 n. 13, 843 A.2d 758, 775 n. 13 (2004)*.   We have stated that this count 'lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.' *State, Use of Employment Sec. Bd. V. Rucker, 211 Md. 153, 126 A.2d 846 (1956)*.

Bourgeois, *supra*, 430 Md. at 46, quoting Benson v. State, 389 Md. 615, 652-653 (2005).

Clearly, 3 Bea's and Connie Stewart have come into possession of money that they had no right to.   Due to her false statements in certifying on various loan documents that she was eligible

for a PPP loan in the amount of $1,706,117, 3 Bea's and Connie Stewart have come into possession of $1,706,117.   Despite demands for return of the money by Cross River, 3 Bea's and Connie Stewart have failed to return the funds.   3 Bea's and Connie Stewart have no right to retain these funds.   3 Bea's and Connie Stewart were never legally entitled to receive funds in that amount; yet they retained them.   They have admitted receiving the funds and have admitted to failing to return the funds.

Cross River is entitled to restitution pursuant to its money had and received claim.   It is respectfully submitted that the Court grant summary judgment on this claim.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CONVERSION CLAIM

Conversion is an intentional tort consisting of two elements: a physical act combined with a certain state of mind.   See Darcars Motors of Silver Springs, Inc. v. Borzym, 379 Md. 249, 261 (Md. 2004), citing Allied Investment Corp. v. Jasen, 354 Md. 547, 560 (1999).   The first element consists of 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it."   Darcars, supra, 379 Md. at 261, quoting Allied Investment, supra, 354 Md. at 560.   "This act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits."   Darcars, supra, 379 Md. at 261-262.   "Besides the physical act of exerting unlawful control, there is an intent element to the tort of conversion, and a wide range of states of mind qualify. . . . The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property."   Darcars, supra, 379 Md. at 262.

Although generally money, i.e. currency, is not subject to a claim for conversion in Maryland, there is an exception when a plaintiff seeks to recover "funds that have been or should

have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." <u>Allied Investment</u>, *supra*, 354 Md. at 565, <u>quoting</u> 1 Fowler V. Harper et al., <u>The Law of Torts</u>, § 2.13, at 2:56 (3d ed. 1986).   Filing loan documents to obtain $1,706,117 in PPP loan funds when 3 Bea's only qualified for at most $20,680 is clearly wrongful, as is retaining the funds despite demand for return of the funds by Cross River. Therefore, the exception to the inapplicability of money as the subject of conversion applies.

By taking possession of the funds, 3 Bea's and Connie Stewart engaged in a "distinct act of ownership or dominion." <u>Darcars</u>, *supra*, 379 Md. at 261.   The funds rightfully belonged to Cross River and emanated from Cross River based on false and fraudulent statements on loan documents.   This was "in denial of" Cross River's rights to the funds, or "inconsistent with it." <u>Id.</u>   As explained in detail *supra*, Connie Stewart removed $1.5 Million from the 3 Bea's bank account on May 7, 2020, the date the funds were wired into it.   The funds were moved into her own bank account, her son Burton Sherbert's bank account, an entity she controlled, Diane's Plea's bank account, and she procured two large cashier's checks payable to herself in the amounts of $250,000 and $150,000.   Four days later, on May 11, 2020, she transferred or deposited $1.141 Million of the funds[3] into three new bank accounts opened for a brand new entity formed that date, Three Bea's Incorporated, of which she was the sole incorporator and the resident agent. Over the course of approximately one year, more funds were transferred and spent, including but not limited

---

[3]     $241,555.25     Amount transferred on 5/11/20 from 3 Bea's acct. x1025 to open Three Bea's Inc. acct. x9366
   + $150,000.00     Cashier's Ck payable to Connie B. Stewart dated 5/21/20 out of 3 Bea's Acct. x1025 to open Three Bea's Inc. acct. x9379
   + <u>$750,000.00</u>     3 Cashier's Checks for $250,000 each, two payable to Connie Stewart dated 5/8/20 out of Diane's Plea acct. x0791 to open Three Bea's Inc. acct. x3268
   $1,141,555.25

<u>See</u> Statement of Undisputed Material Facts, ¶¶ 33-36, and referenced exhibits.

to, on an expensive new home for herself in Brandywine, Maryland for $749,000.   See also pp. 4-7, *supra*.

All this demonstrates that by taking possession of and transferring and spending the funds, 3 Bea's and Connie Stewart intended to exercise dominion or control over the funds inconsistent with Cross River's rights.   Connie Stewart knew full well that she had received funds considerably beyond any PPP loan amount 3 Bea's qualified for, yet she retained the money; indeed on the date the money was wired she engaged in a $1.5 Million spree of transfers to herself, her son, and another entity she controlled, Diane's Plea.   See Statement of Undisputed Material Facts, ¶¶ 28-32 and **Ex**. 4, 8.   This removal on the date of receipt clearly demonstrates an intent to exercise a dominion or control over the funds.

The undisputed facts demonstrate that 3 Bea's and Connie Stewart took control of the funds with the intent to exercise dominion or control of the funds.   It is respectfully submitted that Cross River is entitled to summary judgment on its conversion claim.

## VI. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FRAUD/MISREPRESENTATION CLAIM

All of the undisputed facts and evidence support Cross River's claim of fraud based on 3 Bea's and Connie Stewart's misrepresentations.   "In order to recover damages for fraud, Plaintiff must prove the following: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation."   Baney Corp. v. Agilysys NV, LLC, 773 F.Supp. 2d 593, 608 (D. Md. 2011), citing Nails v. S & R, Inc., 334 Md. 398, 415 (Md. 1994).   See also Hoffman v. Stamper, 385 Md. 1, 28 (2005).

Claims sounding in fraud are subject to the heightened pleading standard of F.R.C.P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Connie Stewart, on behalf of herself and 3 Bea's, made actionable misrepresentations to Cross River to induce it to loan 3 Bea's the funds.   These misrepresentations included the following:

1)        On May 5, 2020, Connie Stewart on behalf of herself and 3 Bea's certified on the Borrower Application form that her average monthly payroll was $8,272, that the business had eight employees, and that the loan amount qualified for was $20,680.   She certified on the same form that the loaned funds would be used for payroll, lease/mortgage interest payments, and utilities payments, in accordance with the PPP Rule.   See Cross River Aff., **Ex 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2.   Concurrently and contradictorily she certified on three other loan documents that the loan principal amount was $1,706,117, not $20,680.   Connie Stewart has admitted to signing and/or initialing the above. See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Resolution to Borrow, pp. 1-2 (where she initialed and certified that 3 Bea's was eligible for a PPP loan of $1,706,117), Settlement Sheet, p. 2 (where she certified that the Note amount was $1,706,117), and Note, p. 6 (which she executed in the amount of $1,706,117).   See also Statement of Undisputed Material Facts, ¶ 13.   These false, misleading and contradictory statements induced Cross River to wire $1,706,117 into 3 Bea's account, when it only qualified for $20,680.   These certifications, signatures and initials were done with the intention to induce Cross River to provide 3 Bea's with an inflated $1,706,117 in funds and with the intention to defraud Cross River, and with the

intention that Cross River rely to its detriment on the false information.

2)      Connie Stewart, on behalf of herself and 3 Bea's, certified on the Borrower Application form that:

> the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

See Cross River Aff., **Ex 1**, Loan Application/Loan Documents, Borrower Application Form, p. 2.

Clearly the information she certified to on the Borrower Application and other loan documents was untrue and inaccurate because on three loan documents she certified and/or initialed and/or signed that the loan principal amount was $1,706,117, but on the Borrower Application Form she stated 3 Bea's was only eligible for a $20,680 PPP loan.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2, Resolution to Borrow, pp. 1-2, Settlement Sheet, p. 2, and Note, pp. 1-6.   Her contradictory statements and certifications induced Cross River to wire $1,706,711 into 3 Bea's bank account instead of $20,680.

3)      On the Borrower Application Form, Connie Stewart on behalf of herself and 3 Bea's falsely certified that "[t]he funds would be used to retain workers and maintain payroll or make mortgage interest payments, as specified under the Paycheck Protection Program Rule."   It is also stated by Connie Stewart that "I understand that if funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2.   This certification was false because she immediately transferred $1.1 Million of

loan funds out of 3 Bea's account x1025 and into her personal bank account x1125, her son Burton

Sherbert's bank account x4724, an entity she controlled, Diane's Plea's bank account x0791, and

she removed $400,000 in the form of two cashier's check's payable to herself in the amounts of

$250,000 and $150,000.   See pp. 4-5, *supra.*   Four days later, on May 11, 2020, she transferred

another $241,555.25 out of 3 Bea's account x1025 to a new bank account x9366 in the name of a

new entity she formed on that same date, Three Bea's Incorporated.   See pp. 5-6, *supra.*   Also on

May 11, 2020, she also deposited the cashier's check payable to herself in the amount of $150,000

into a second new Three Bea's Incorporated bank account x9379.   See pp. 5-6, *supra.*   Also on

May 11, 2020, she deposited $750,000 into a third new Three Bea's Incorporated bank account

x3268, consisting of two $250,000 cashier's check from Diane's Plea account x0791 payable to

herself, and a third unidentified cashier's check.   See p. 5, *supra.*   She did not use the $1,706,117

to fund payroll and other permissible expenses pursuant to the PPP Rule, but even if she did, the

amount was far too large for those expenses.   $1,706,117 was far too large an amount to fund 3

Bea's actual $8,272 monthly payroll and other permissible expenses.   What she did do with the

funds was impermissibly and aggressively transfer the funds out of the 3 Bea's Assisted Living,

LLC account x1025 on the same date as receipt, May 7, 2020, and four days later, on May 11,

2020, to herself, her son, to Diane's Plea, and to three brand new Three Bea's Incorporated bank

accounts for the brand new Three Bea's Incorporated entity she formed that day.   This aggressive

activity indicates she never intended to use the money for permissible purposes, but rather intended

to defraud Cross River by transferring over $1.7 Million to herself, her son, and to other entities

she controlled.   Among her expenditures was purchase of an expensive $749,000 home for herself

in September of 2020.   See pp. 4-7, *supra.*

The aforesaid certifications and statements by Connie Stewart were all false, and the signatures attesting to the incorrect eligible loan amount were authentic which Connie Stewart has admitted.  See p. 9, *supra*.  Connie Stewart on behalf of herself and 3 Bea's knowingly and with intent to defraud Cross River made a number of intentionally false certifications and false statements, including but not limited to, on the Borrower Application Form, Resolution to Borrower, Settlement Sheet, and the Note connected to the PPP loan issued to 3 Bea's.  Connie Stewart on behalf of herself and 3 Bea's knew the statements and certifications and signatures and initials were false, or falsely attesting to an improper loan amount, at the time they were made and made them with the intent to deceive and defraud Cross River.

In reliance on the false information provided by Connie Stewart and 3 Bea's, Cross River wired $1,706,117 into 3 Bea's account x1025 on May 7, 2020.  See pp. 2 and 10, *supra*.  Cross River reasonably and justifiably relied to its detriment on the false certifications, statements, signatures and initials affirming/attesting to false information; and as a result, has been significantly harmed.  Cross River has and will continue to sustain damages.  It is entitled to a money judgment against Connie Stewart and 3 Bea's, jointly and severally, to compensate itself for the losses it has suffered in the amount of $1,829,358.20, plus attorneys' fees and costs.  See p. 7, *supra*, for calculation of damages.

The only cognizable purpose for the fraud committed by Connie Stewart and 3 Bea's was that Connie Stewart intended to enrich herself, her son, and entities she controlled at the expense of Cross River.  Connie Stewart wildly transferred $1.1 Million in funds on the date the funds were wired to ensure the money could not be recalled or returned from 3 Bea's account x1025 and to use it to finance herself, her son, and other entities she controlled, in effect channeling the money through other accounts owned and controlled by herself, her son, and other entities, including

19

hundreds of thousands of dollars in certified checks payable to herself.   See pp. 4-5, *supra*.   Four days later, on May 11, 2020, she engaged in more transfers of hundreds of thousands of dollars, again in effect diverting the money.   See pp. 5-6, *supra*.

Beginning shortly after the funds were provided, Cross River requested return of the PPP loan funds, which was wrongfully refused by Connie Stewart and 3 Bea's.[4]   See pp. 2 and 7, *supra*.   Connie Stewart and 3 Bea's admit that Cross River has requested return of the funds and admit they have failed to return the funds.   See pp. 2, 6, *supra*.

Cross River reasonably and justifiably relied to its detriment on the aforesaid false certifications and statements made by Connie Stewart and 3 Bea's on the loan documents certifying eligibility for a grossly inflated PPP loan in the amount of $1,706,117.   As a result of Connie Stewart's and 3 Bea's fraudulent conduct as aforesaid, Cross River has and will continue to sustain damages and compensable injury.   It is respectfully requested that summary judgment be granted on Cross River's fraud claim.

## VII.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM

To establish negligent misrepresentation, a plaintiff must show that:

(1) the defendant, owing a duty of care to the plaintiff, negligently   asserts  a  false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 337 (1982); see also My National Tax & Insurance

Services, Inc. v. H & R Block Tax Services, Inc., 839 F.Supp. 2d 816, 819 (D. Md. 2012); Dierker

---

[4] On or about May 20, 2020, Cross River submitted an Indemnification Agreement Request for Return of Funds to Bank of America, regarding 3 Bea's account x1025, but only $4,717.53 was recovered.   See Statement of Undisputed Material Facts, ¶ 27.

v. Eagle National Bank, 888 F.Supp. 2d 645, 655 (D. Md. 2012).

Connie Stewart and 3 Bea's, as borrowers, owed a duty of care to Cross River, as lender. Connie Stewart on behalf of herself and 3 Bea's executed and submitted the loan documents and was accordingly obligated to perform obligations under the loan documents.   On the Borrower Application Form, Connie Stewart certified to numerous statements, which evidence the duty of care she and 3 Bea's owed Cross River.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2, containing twenty-four (24) statements Connie Stewart certified to.   Similarly, the other loan documents, including the Resolution to Borrow, the Settlement Sheet, the Note, and the Authorization to Release Information, all contain statements certified to and/or signed by Connie Stewart, which, on their face create a duty of care, including a duty not to make false statements, owed to the lender, Cross River.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents.

The Borrower Application Form contains the cited certified statements, including an acknowledgement of understanding a specific federal fraud warning.   Similarly, the other loan documents, including the Resolution to Borrow, the Settlement Sheet, the Note, the Authorization to Release Information, all contain statements certified to by Connie Stewart which, on their face, create a duty of care, including a duty not to make false statements, owed to the lender, Cross River. See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents.

In Point V, *supra*, Cross River identified the specific instances of intentional fraud committed by Connie Stewart and 3 Bea's, and relies on those same instances here as satisfying the criteria of the first prong of negligent misrepresentation: negligently asserting a false statement, while owing a duty of care to the plaintiff.

As to the second element of negligent misrepresentation, Connie Stewart and 3 Bea's intended that their statements would be acted upon by Cross River: namely by processing the loan. As to the third prong, Connie Stewart and 3 Bea's had knowledge that Cross River would  rely on the statements in the loan documents, which, if erroneous, would cause loss or injury, because they submitted the executed loan documents and received the funds, both of which they have admitted. See pp. 2, 10, *supra*.   As to the fourth prong, Cross River did justifiably take action based on the false statements and misrepresentations by processing and funding the loan.   As to the fifth prong, Cross River did suffer damage proximately caused by Connie Stewart and 3 Bea's negligence because it funded an inflated loan amount which, despite demand, was not returned or repaid.   See pp. 2, 10, *supra*.

Accordingly, it is respectfully submitted that summary judgment be granted on Cross River's negligent misrepresentation claim.

## VIII.   SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIM

The Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), at Md. Commercial Law Code Ann. § 15-206 states:

> Every conveyance made and every obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

The MUFCA, at Md. Commercial Law Code Ann. § 15-204, states:

> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

The MUFCA, at Md. Commercial Law Code Ann. § 15-203 states:

Fair consideration is given for property or an obligation if:

(1) In exchange for the property or obligation, as a fair equivalent for it and and in good faith, property is conveyed or an antecedent debt is satisfied; or

(2) The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained.

To prove an intentional fraudulent conveyance, a creditor may rely on the presence of any number of nine "generally recognized" indicia of fraud sufficient to support a finding of a fraudulent conveyance.   See Wellcraft Marine Corp. v. Roader, 314 Md. 186, 189-90 (1988) (citing Berger v. Hi-Gear Tire and Auto Supply, Inc., 257 Md. 470, 476 (1970)).   These "badges of fraud" include, but are not limited to: 1) insolvency or indebtedness of the transferor; 2) lack of consideration for the conveyance, 3) relationship between the transferor and transferee, 4) the pendency or threat of litigation, 5) secrecy or concealment, 6) departure from the usual means of business, 7) transfer of the debtor's entire estate, 8) reservation of benefit to the transferor, and 9) retention by the debtor of possession of the property.   Berger, supra, 257 Md. at 476.

On or about September 25, 2020, Connie Stewart purchased real property located in Brandywine, Maryland using $749,000 of 3 Bea's PPP loan proceeds, a few short months after 3 Bea's received the PPP loan funds.   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 80-82, **Ex. 2,** Answer to Amended Complaint, ¶¶ 80-82 (where defendants "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House" and "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House with funds originating from the PPP funds."), **Ex. 5**, Deed for Brandywine Property dated September 25, 2020 and related purchase documents, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 5, (where Connie Stewart admits she "paid $749,000 to purchase the Brandywine Property, which is where a majority of the funds were used.").   She paid for the Brandywine Property using Three Bea's Incorporated's account x3268.   See Counsel Aff., **Ex. 9**, relevant portion of Three Bea's

Incorporated account x3268 September 2020 bank statement.   She has admitted using the funds to purchase the house.   See Id.   On or about December 4, 2020, Connie Stewart conveyed the Brandywine Property to her sons, David Stewart, Jr. and Burton Sherbert for no consideration. See **Ex. 6**, December 4, 2020 Grant Deed.   On or about August 30, 2021, David Stewart, Jr. and Burton Sherbert conveyed the Brandywine Property to David Stewart, Jr. and Connie Stewart for no consideration.   See Counsel Aff., **Ex. 7**, August 30, 2021 Grant Deed.

Neither the conveyance of funds by 3 Bea's for use by Connie Stewart, nor the conveyances of the Brandywine Property by and among Connie Stewart, David Stewart, and Burton Sherbert were for fair consideration, as they were indeed for no consideration nor for any fair equivalent, in contravention of Md. Commercial Law Code Ann. § 15-203.

Moreover, there are numerous badges of fraud to support an inference and finding of intentional fraudulent conveyances with respect to these transfers. Specifically, the transfers were for no consideration, they were made outside of the ordinary course of business, they were made among family members, and they were made in the presence of substantial indebtedness of 3 Bea's to Cross River.   The conveyances of the Brandywine Property have harmed Cross River because Connie Stewart is arguably only a fifty percent (50%) owner, where she was originally a one hundred percent (100%) owner, as a result of her use of the Cross River funds for the Property purchase.

As such, the conveyances should be set aside and declared void.   See Md. Commercial Law Code Ann. § 15-209(a)(1), which provides:

> (a) If a conveyance or obligation is fraudulent as to a creditor whose claim has matured the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser, may:

    (1) Have the conveyance set aside or obligation annulled to the extent necessary
        to satisfy the claim; or
    (2) Levy on or garnish the property conveyed as if the conveyance were not made.

(b) In an action to have a conveyance set aside or an obligation annulled, it is not
    necessary as a condition to the granting of relief that the creditor first obtain judgment
    on the claim.

(c) A purchaser who without actual fraudulent intent has given less than a fair
    consideration for the conveyance or obligation may retain the property or obligation
    as security for repayment.

A fraudulent conveyance will be vacated unless the grantee took in good faith without notice and for value.   See Messe v. Messee, 212 Md. App. 359, 371 (2013), citing Oles Envelope Corp. v. Oles, 193 Md. 79, 89 (1949).   "Under Maryland law, once a conveyance is proven to be fraudulent, a creditor has the option of either having the conveyance set aside or attaching the property conveyed."   Fick v. Perpetual Title Co., 115 Md. App. 524, 534-535 (1996), cert. denied, 347 Md. 153 (1997); see also Frain v. Perry, 92 Md. App. 605, 620 n. 7, cert. denied, 328 Md. 237 (1992).   This requested relief is made without prejudice to Cross River's right to take any other steps necessary to obtain the property available under the MUFCA or any other applicable law.

Accordingly, it is respectfully requested that the Court grant summary judgment against Connie Stewart and David Stewart, Jr. as to its fraudulent conveyance claim.

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that Cross River's Motion for Summary Judgment be granted on all counts.

Dated:   November 11, 2022

/s/   Blake W. Frieman
Blake W. Frieman, MD. Fed. No. 20959
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: 703.525.4000 | Fax: 703.525.2207
bfrieman@beankinney.com

/s/   *Jonathan J. Lerner*
JONATHAN J. LERNER, ESQ.
*Pro Hac Vice*
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200 | Fax: 973.364.1403
JLerner@starrgern.com

*ATTORNEYS FOR CROSS RIVER BANK.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 11, 2022, I electronically filed the foregoing using the CM/ECF system, thus causing an electronic copy to be served upon all registered users in this case.

/s/   Jonathan J. Lerner
Jonathan J. Lerner