# EXHIBIT  3

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CROSS RIVER BANK,** | |
| **Plaintiff,** | |
| v. | **Case No.: 8:21-cv-03210-TJS** |
| **3 BEA'S ASSISTED LIVING LLC, a Maryland Limited Liability Company, a/k/a THREE BEA'S ASSISTED LIVING, CONNIE STEWART, and DAVID STEWART, JR,** | |
| **Defendants.** | |

### CONNIE STEWART'S ANSWERS TO CROSS RIVER BANK'S INTERROGATORIES

To:   Blake W. Frieman, Esquire
      Bean, Kinney & Korman, P.C.
      2311 Wilson Blvd., Suite 500
      Arlington, VA 22201


From: Connie Stewart
      c/o Brent M. Ahalt, Esquire
      McNamee Hosea
      6411 Ivy Lane, Suite 200
      Greenbelt, MD 20770

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, Connie Stewart, by undersigned counsel, answers the Interrogatories propounded by Plaintiff, Cross River Bank ("CRB"), as follows:

### General Objections

1.      Connie Stewart objects to the Interrogatories (and instructions) to the extent the Interrogatories (and instructions) purport to impose requirements other than or in addition to the

requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland. Connie Stewart intends to respond as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland and as otherwise directed by the Court. Connie Stewart does not by answering the Interrogatories accede to, acknowledge, or accept Plaintiff's instructions.

2.     Connie Stewart objects to the Interrogatories to the extent the Interrogatories call for information covered by the attorney client privilege, the work product doctrine, or any other applicable privilege. Connie Stewart will not give answers containing information subject to protection under the attorney client privilege or the work product doctrine.

3.     Connie Stewart objects to the Interrogatories to the extent they seek information that is proprietary or confidential to Connie Stewart or any third party to which Connie Stewart may be under the obligation of confidentiality.

4.     Connie Stewart objects to the Interrogatories to the extent they seek irrelevant information, i.e., information not reasonably calculated to the lead to admissible evidence.

5.     In answering the Interrogatories, Connie Stewart does not waive the foregoing general objections or the specific objections that are set forth in the answers to particular Interrogatories. By making its answers (partial or complete), Connie Stewart does not concede that any Interrogatory is relevant to this action, admissible in court, or is reasonably calculated to lead to the discovery of admissible evidence. Connie Stewart specifically reserves the right to object to further discovery into the subject matter of any of the Interrogatories, to the introduction into evidence of any Answer, and to supplement or amend its answers should further investigation disclose additional information.

## ANSWERS

**INTERROGATORY NO. 1:**  Identify, in accordance with the definitions set forth above, each and every person having knowledge of any fact relevant to the subject matter of this litigation, and with respect to each such person set forth a general description of the subject matter of such person's knowledge.

**ANSWER:**

1. **Connie Stewart:** Has knowledge regarding her application for the PPP loan, and has knowledge of the information that she filled out. She additionally has knowledge of her interactions with Charles Tucker and his law firm, especially with regards to the advice given to her by Mr. Tucker as to the PPP loan and what the funds could be used for. Additionally, Ms. Stewart has knowledge of the purchase of the ███████████████, Brandywine, Maryland ██████ property (the "Brandywine Property"), and she has further knowledge concerning the transfers surrounding the Brandywine property.

2. **David Stewart:** Had knowledge regarding his interactions with Charles Tucker and his law firm. He also has information regarding the Brandywine Property and the transfers surrounding the property.

3. **Khadijah Able:** She formerly worked with Charles Tucker as a paralegal or secretary for his law firm. She has heard conversations between Mr. Tucker and representatives with Cross River Bank regarding Ms. Stewart's PPP loan. She has knowledge as to the legal advice Mr. Tucker gave to Ms. Stewart in regards to her PPP loan.

4. **Charles Tucker:** He was hired by Ms. Stewart and 3 Bea's to represent them concerning issues with the PPP loan. Mr. Tucker has information on his advice to Ms. Stewart regarding the treatment of the PPP loan, and Mr. Tucker spoke to several representatives from Cross River Bank.

5. **Burton Sherbert:** He assisted Ms. Connie Stewart when she had issues with submitting her PPP loan. He also knew some of the interactions between Ms. Stewart and Charles Tucker.

**INTERROGATORY NO. 2:**  If you or anyone representing you at any time had any written or oral communications with Cross River Bank or any representative of Cross River Bank concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication.

**ANSWER:**   Ms. Stewart and her attorney at the time, Charles Tucker, spoke with a representative for Cross River Bank near the end of May, 2020. At that time, Mr. Tucker advised Ms. Stewart that she should keep that money and use it expand her business. Mr. Tucker further informed her that he would apply for forgiveness of the loan.

On May 3, 2021, Ms. Stewart communicated by email to "Spencer (PPP)" with email address "support@ppp-crb.zendesk.com. Ms. Stewart emailed the helpdesk in regards to the loan forgiveness and loan servicing. She was informed that it would take time before her loan became available to loan servicing third parties and for her to be able to submit a loan forgiveness.

Ms. Stewart spoke with a representative from Cross River Bank, a woman whose name she did not manage to catch, about how the PPP loan was calculated around May 6th 2020. This was after Ms. Stewart finished the docusign document.  Ms. Stewart spoke with the representative to inquire how the loan amount was calculated. The woman stated that she would contact Ms. Stewart again and did not follow up until 2 weeks later. Ms. Stewart has a voice message from the representative.

Ms. Stewart spoke with a representative at the time she applied for the PPP loan for help completing and uploading the document. Ms. Stewart's son, Burton Sherbert, was also assisting her, and he was the one that spoke with the Cross River Bank employee. Ms. Stewart did not get the woman's name, but she is the same individuals as the one in the above paragraph.

**INTERROGATORY NO. 3:**  If you or anyone representing you at any time had any written or oral communications with any of the defendants herein and/or Burton Sherbert, or any representative thereof concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication.

**ANSWER:** There are text messages between Ms. Stewart and Mr. Tucker which will be provided for as part of her document production, as well as emails. There may be text messages involving Burton Sherbet as he was also in communication with Charles Tucker.

Mr. Sherbert also assisted with completing the PPP loan app for Ms. Stewart.

**INTERROGATORY NO. 4:**  If you or anyone representing you at any time had any written or oral communications with a non-party or representative of a non-party concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication.

**ANSWER:** Ms. Stewart has conversed with Ms. Able, who is also assisting Ms. Stewart with her taxes. Ms. Able former worked for Mr. Tucker, so she is familiar with 3 Bea's and the issues regarding the PPP loan. Ms. Able provided McNamee Hosea, P.A. a written statement on January 8, 2022 in which she described her relationship with Ms. Stewart as well as an explanation to why Ms. Stewart spent the PPP loan and Mr. Tucker's involvement and advice.

4

Further, Ms. Able came to the offices of McNamee Hosea on February 14, 2022, in which she was interviewed by Brent Ahalt in regards to any information she had regarding Mr. Tucker and the 3 Bea's PPP loan.

**INTERROGATORY NO. 5:**   Describe in <u>detail</u> where the loan funds issued by Cross River Bank, including but not limited to the $1,706,117 in Paycheck Protection Program ("PPP") loan funds issued to 3 Bea's Assisted Living LLC ("3 Bea's") on or about May of 2020, were transferred and/or spent, or otherwise disposed of, including but not limited to bank names and account numbers, dates and amounts deposited, payees, including but not limited to the seller of the residential property located at ███████████ Brandywine, Maryland ████, and for each payee provide the form of payment, i.e. cash, check, bank check, etc., and include the amounts, dates of payment, check numbers, etc. Include in your answer an identification, pursuant to the instructions, above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart paid $749,000.00 to purchase the Brandywine Property, which is where a majority of the funds were used. Samantha R. Minor was the grantor of the property, and Jamie Semler of Celebrate Settlement Services, LLC aided the parties in the closing of the Brandywine Property.

Ms. Stewart also used the funds to pay the salary of her employees at 3 Bea's, bills for the business, and additional protective gear, such as gloves, masks, sanitation equipment, and more furniture. Ms. Stewart indicated that furniture included new beds for the residents. As indicated on the bank statements, as provided in the document production, funds were also transferred into the bank account of Diane's Plea, Cure Cancer Foundation Inc.

**INTERROGATORY NO. 6:**   Identify in accordance with the instructions above all your assets and bank and other accounts, of any kind, by item, account, date purchased, the purchase price, the name and address of the mortgage holder, if any, and the current balance due on the mortgage, if any, including but not limited to the real property at ███████████, Brandywine, Maryland ████. If an asset is a motor vehicle, provide the make and model and year of the motor vehicle; if there is a lien on the vehicle, provide the name and address of the lienholder; the license plate number and state issued by; and the Vehicle Identification Number.

**ANSWER:** Ms. Stewart notes her objection to this interrogatory as it is outside the scope of the subject matter of this litigation and discovery.

There is no mortgage balance for the ████████████, Brandywine, Maryland ████ address as that was fully paid at closing. Ms. Stewart owns another real property with her husband located at ███████████, Saint Leonard, MD ████. As of November 1, 2021, the principal balance of the mortgage was $248,701.90.

**INTERROGATORY NO. 7:**   Set forth the bank and company names, addresses and account numbers of all bank and stock accounts in which your name appears and/or in which you have an account.

**ANSWER:** Ms. Stewart objects to this interrogatory as it is beyond the scope of this discovery. Her assets in other accounts are not relevant to the PPP loan, the amounts owed, or how the loan was obtained. The Plaintiff is able to seek this information in any post-judgment discovery.

**INTERROGATORY NO. 8:** Identify all real property and businesses you have an ownership interest in, and provide the names, addresses and telephone numbers of all businesses in which you have an interest and set forth the nature of the interest, and with respect to the real property provide the names and addresses of all owners, if any, besides yourself, the date the real property was purchased, the purchase price, the name and address of the mortgage holder, if any, and the current balance due on the mortgage, if any.

**ANSWER:** Connie Stewart is the sole owner of 3 Bea's. Ms. Stewart would like to note that the business has undergone a name change (documents pertaining to this are included as part of document production), and that the name is now Three Beas, Inc.

**INTERROGATORY NO. 9:** Explain in detail why you applied for a PPP loan with Cross River Bank in or about April-May 2020.

**ANSWER:** 3 Bea's applied for a PPP loan to help supplement its income during the pandemic. At the time, the loan was helpful in assuring that 3 Bea's employees would be paid and that the assisted living facility would remain in operation, providing needed care for its elderly residents

**INTERROGATORY NO. 10:**   Identify by name, address, and telephone number the person(s) who made attempts to enter and/or did enter, the initial on-line loan application to Cross River Bank. Identify who input the initial attempted loan application(s) at I.P. address 69.250.117.134 by name, address and telephone number and identify where the computer was physically located at the time of the initial attempted loan application(s). Identify who input the other attempted PPP loan application(s) at I.P. address 76.21.150.181 by name, address and telephone number and identify where the computer was physically located at the time of the other attempted PPP loan application(s).

**ANSWER:** Ms. Stewart is not familiar with the specific IP address referenced in the above interrogatory. However, she believes she knows what this interrogatory refers to. When Ms. Stewart was attempting to complete her PPP loan, she was having issues uploading tax documents. Her son, Burton Sherbert, signed onto the application to see if he could upload the documents for Ms. Stewart. He was not located at the same physical address as Ms. Stewart, as he was staying with a friend, when he signed onto the application. Ms. Stewart was the individual who started the PPP loan, and her son Burton Sherbert was most likely the second IP address that logged onto the application. This occurred on May 5, 2020, and Mr. Sherbert was located at the home of Rudolph Brook's home. Ms. Stewart does not have an address for Mr. Brook.

**INTERROGATORY NO. 11:** Identify by name, address and telephone number the person(s) who made telephone calls to customer service of Pearl Capital inquiring about the PPP loan. Include the dates of the telephone calls and state the purpose of the telephone calls.

**ANSWER:** Ms. Stewart did not remember any calls made to Pearl Capital.

**INTERROGATORY NO. 12:**  Identify by name, address and telephone number the person(s) who made telephone calls to customer service of Cross River Bank about the PPP loan. Include the dates of the telephone calls and state the purpose of the telephone calls.

**ANSWER:** Ms. Stewart and her attorney at the time, Mr. Tucker, spoke with a representative from Cross River Bank at the end of May, 2020. Mr. Tucker's law firm is located at ███████ ████████, Hyattville, MD ████, and his office's phone number is 301-577-1175.

**INTERROGATORY NO. 13:**  Set forth the factual basis for your refusal to return $1,706,117 3 Bea's received from Cross River Bank less the $20,680 3 Bea's was allegedly eligible for when Cross River Bank repeatedly contacted you for return of the excess funds starting in the summer of 2020.

**ANSWER:** Ms. Stewart was advised by Mr. Tucker that she did not have to return the PPP loan. Ms. Stewart is not familiar with the PPP loan, other than that it was aid for business owners. She relied upon Mr. Tucker's advice, and he also stated to her that he would apply for loan forgiveness on her behalf, so she did not have to worry about the money.

**INTERROGATORY NO. 14:**  Set forth the factual basis for the statement in paragraph 95 of your Answer to Amended Complaint, listed under Affirmative and Negative Defenses, that Charles Tucker of the Tucker Moore Law Group advised you about PPP loan funds, and that you received advice from him that the loan would be forgiven, that 3 Bea's did not need to return the funds, and that the funds could be used to expand a business. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Mr. Tucker was Ms. Stewart's attorney. When Ms. Stewart received the initial loan from Cross River Bank, she was concerned by the amount. However, Mr. Tucker advised her that it was her money, and that she could use the money to expand her business. Mr. Tucker did not advise Ms. Stewart that the money could only be used for the business's current expenses. Further, Mr. Tucker advised that most of the money would be forgiven. Ms. Stewart took Mr. Tucker's advice, as he was her attorney, and she subsequently used the PPP loan to invest in her business to expand it, which led to the purchase of the Brandywine Property.

**INTERROGATORY NO. 15:**  Set forth the factual basis for the statement in paragraph 12 of your Answer to Amended Complaint where you admit that you submitted an online application for a PPP loan on behalf of 3 Bea's, yet you deny that you misrepresented 3 Bea's' average monthly payroll to be $1,266,967, and sought from Cross River Bank a PPP loan amount of $1,706,711. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did file an online application for the PPP loan, but at the time that she filled out the paperwork, she only put in information that would have allowed her a PPP loan in the amount of $20,680. She did not seek the $1,706,711 from Cross River Bank.

**INTERROGATORY NO. 16:**  Set forth the factual basis for the statement in paragraph 14 of your Answer to Amended Complaint where you admit that you signed a Borrower Application

Form and that the documents referenced in paragraph 14 of the Amended Complaint state what they state, yet deny that you certified that the average monthly payroll of the business was $8,272; that the business had eight (8) employees; that the loan amount requested was $20,680; that the business was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC; that the loaned funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule; that you understood that if the funds were knowingly used for unauthorized purposes, the federal government could hold you legally liable, including for charges of fraud; and that the information provided in the application and in all supporting documents and forms was true and accurate in all material respects. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did sign the Borrower Application Form. She believes that the document speaks for itself, and that she signed acknowledging certain statements provided for on the form.

**INTERROGATORY NO. 17:** Set forth the factual basis for the statement in paragraph 15 of your Answer to Amended Complaint where you admit that you signed a Resolution to Borrow and that the documents referenced in paragraph 15 of the Amended Complaint state what they state, yet you deny that on May 5, 2020, you certified on the Resolution to Borrow that you are an officer of 3 Bea's and among other things that the borrower is a duly formed entity which is, and at all times was, duly organized, validly existing and in good standing under the laws of the State of its organization, and that you also certified separately as president, manager or managing member of the borrower that you were duly elected, appointed, or employed by or for the borrower, and occupied the position set forth opposite your name, and that the resolution now stands of record on the books of the borrower. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the Resolution to Borrower. When she signed the document, she acknowledged certain statements and certified those statements with her signature.

**INTERROGATORY NO. 18:** Set forth the factual basis for the statement in paragraph 16 of your Answer to Amended Complaint where you deny that on May 5, 2020, you initialed the top section of the Resolution to Borrow which stated the loan principal was $1,706,117, the Loan Date was 4/30/20, the Loan Number was ███████7309 and that you were an officer of the borrower. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents

**ANSWER:** Ms. Stewart did initial the top section of the Resolution to Borrow but she did not understand the loan amount and was under the impression that it would have been for the $20,680 amount.

**INTERROGATORY NO. 19:** Set forth the factual basis for the statement in paragraph 17 of your Answer to Amended Complaint where you admit that you signed a U.S. Small Business Settlement Sheet and that the documents referenced in paragraph 17 of the Amended Complaint state what they state, yet you deny that you certified that the note amount was $1,706,117, that on May 5, 2020, you certified on the U.S. Small Business Settlement Sheet that all of the above statements were accurate to the best of your knowledge and that submitting false information to the government may result in criminal prosecution and fines, that the SBA Loan Number was ████7309, that the lender was Cross River Bank, that the loan type was a term loan, and that there would be full disbursement. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Settlement Sheet. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 20:** Set forth the factual basis for the statement in paragraph 18 of your Answer to Amended Complaint where you admit that you signed a U.S. Small Business Administration Note, and that the documents referenced in paragraph 18 of the Amended Complaint state what they state, yet deny that among numerous provisions contained in the Note is one which states "All individuals and entities signing this Note are jointly and severally liable," that the Note sets forth the amount of the loan as $1,706,117, that the date of the Note is April 30, 2020, that the SBA Loan Number is ████7309, that the SBA Loan Name is Three Bea's Assisted Living, that the lender is Cross River Bank, that the interest rate is one (1) percent per annum, that the first numbered paragraph of the Note, titled "Promise to Pay," states: "[i]n return for the Loan, Borrower promises to pay to the order of Lender the amount of one million, seven hundred six thousand, one hundred seventeen Dollars, interest on the unpaid principal balance, and all other amounts required by this Note." Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Administration Note. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 21:** Set forth the factual basis for the statement in paragraph 19 of your Answer to Amended Complaint where you admit that the documents referenced state what they state, yet deny that the Note required the borrower to make payments of principal and interest following a six-month period of payment deferral consisting of eighteen (18) monthly consecutive principal and interest payments, beginning seven months from the date of initial disbursement, with interest at a rate of one (1) percent per annum payable to Cross River Bank. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Administration Note. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 22:** Set forth the factual basis for the statement in paragraph 21 of your Answer to Amended Complaint where you deny that your PPP loan application documents, including electronically submitted materials, contained false and misleading statements, including, but not limited to, that 3 Bea's qualified for a PPP loan in the amount of $1,706,117. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart and 3 Bea's deny that they submitted false and misleading statements on their application. The Borrower Application Form indicates that when Ms. Stewart applied for the PPP loan, she stated that the monthly payroll was $8272 with 8 employees for the business. The submitted form does not contain any false information.

**INTERROGATORY NO. 23:** Set forth the factual basis for the statement in paragraph 22 of your Answer to Amended Complaint where you deny that having certified that 3 Bea's had eight (8) employees and an average monthly payroll of $ 8,272 you falsely certified repeatedly on various loan documents that 3 Bea's was eligible for a PPP loan of $1,706,117, yet the maximum PPP loan amount pursuant to the Rule's formula was $20,680 ($8,272 x 2.5). Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did not falsely certify that 3 Bea's was eligible for a PPP loan of $1,706,711. Ms. Stewart was not aware with much detail how PPP loans were calculated or determined. When she consulted her attorney, Mr. Tucker, he informed her that the money was hers. Further, on April 30, 2020, Ms. Stewart sent an email to ppp.support@crossriver.com in regards to her SBA loan application. She received a generic response indicating that her application had been accepted, processed by Cross River, and ready to be submitted to SBA's E-Tran system. She was not informed of how much money she was to receive. As such, it is clear that Ms. Stewart did not fully understand any such maximum limit, and when she did question the amount she received, Ms. Stewart received advice that the money was hers.

**INTERROGATORY NO. 24:** Set forth the factual basis for the statement in paragraph 27 of your Answer to Amended Complaint where you deny that you are in default under the Note for falsely certifying on various loan documents that 3 Bea's was eligible for a $1,706,117 PPP loan. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** As stated in the prior answers, Ms. Stewart did not falsely certify that she was eligible for a $1,706,711 PPP loan. She submitted her Borrower Application with true and correct information. When Cross Bank presented documents with the $1,706,117 PPP loan

amount, Ms. Stewart did not know that this was not the correct amount, nor did she know that there was anything improper with her application.

**INTERROGATORY NO. 25:** Set forth the factual basis for the statement in paragraph 29 of your Answer to Amended Complaint where you deny that you are in default of the Note due to failure to make required payments of principal and interest. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart and 3 Bea's were counseled that they were not required to pay the PPP loan, and Ms. Stewart and 3 Bea's relied upon that information.

<u>**CERTIFICATION**</u>

I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby further certify that the copies of the reports annexed hereto rendered either by expert witnesses and/or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, either written or oral, are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.

_____
Connie Stewart

Respectfully submitted,

McNAMEE HOSEA, P.A.

By: /s/ Brent M. Ahalt
    Brent M. Ahalt, Bar No.13741
    6411 Ivy Lane, Suite 200
    Greenbelt, MD 20770
    301-441-2420
    *Attorneys for Defendants*

## <u>CERTIFICATION</u>

I certify that the foregoing statements are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby further certify that the copies of the reports annexed hereto rendered either by expert witnesses and/or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, either written or oral, are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.


Dated: _____          _____
                                CONNIE STEWART

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2022, a copy of the foregoing was served on all counsel of record in this proceeding, via first class mail to:

Blake W. Frieman, Esquire
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201

Jonathan J. Lerner, Esquire
*Pro Hac Vice*
Starr, Gern, Davidson & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640

/s/ Brent M. Ahalt
Brent M. Ahalt

12

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **CROSS RIVER BANK,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**3 BEA'S ASSISTED LIVING LLC, a Maryland Limited Liability Company, a/k/a THREE BEA'S ASSISTED LIVING, CONNIE STEWART, and DAVID STEWART, JR,**<br><br>     **Defendants.** | **Case No.:** 8:21-cv-03210-TJS |

<u>**3 BEA'S ASSISTED LIVING LLC'S ANSWERS TO CROSS RIVER BANK'S
INTERROGATORIES**</u>

To:    Blake W. Frieman, Esquire
       Bean, Kinney & Korman, P.C.
       2311 Wilson Blvd., Suite 500
       Arlington, VA 22201


From:  3 Bea's Assisted Living LLC
       c/o Brent M. Ahalt, Esquire
       McNamee Hosea
       6411 Ivy Lane, Suite 200
       Greenbelt, MD 20770

       Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, 3 Bea's Assisted

Living LLC ("3 Bea's"), by undersigned counsel, answers the Interrogatories propounded by

Plaintiff, Cross River Bank ("CRB"), as follows:


<u>**General Objections**</u>

1.     3 Bea's objects to the Interrogatories (and instructions) to the extent the Interrogatories

(and instructions) purport to impose requirements other than or in addition to the requirements of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland.  3 Bea's intends to respond as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland and as otherwise directed by the Court. 3 Bea's does not by answering the Interrogatories accede to, acknowledge, or accept Plaintiff's instructions.

2.      3 Bea's objects to the Interrogatories to the extent the Interrogatories call for information covered by the attorney client privilege, the work product doctrine, or any other applicable privilege. 3 Bea's will not give answers containing information subject to protection under the attorney client privilege or the work product doctrine.

3.      3 Bea's objects to the Interrogatories to the extent they seek information that is proprietary or confidential to 3 Bea's or any third party to which 3 Bea's may be under the obligation of confidentiality.

4.      3 Bea's objects to the Interrogatories to the extent they seek irrelevant information, i.e., information not reasonably calculated to the lead to admissible evidence.

5.      In answering the Interrogatories, 3 Bea's does not waive the foregoing general objections or the specific objections that are set forth in the answers to particular Interrogatories. By making its answers (partial or complete), 3 Bea's does not concede that any Interrogatory is relevant to this action, admissible in court, or is reasonably calculated to lead to the discovery of admissible evidence.  3 Bea's specifically reserves the right to object to further discovery into the subject matter of any of the Interrogatories, to the introduction into evidence of any Answer, and to supplement or amend its answers should further investigation disclose additional information.

<u>**ANSWERS**</u>

**INTERROGATORY NO. 1:** Identify, in accordance with the definitions set forth above, each and every person having knowledge of any fact relevant to the subject matter of this litigation, and with respect to each such person set forth a general description of the subject matter of such person's knowledge.

<u>**ANSWER:**</u>

1. **Connie Stewart**: Has knowledge regarding her application for the PPP loan, and has knowledge of the information that she filled out. She additionally has knowledge of her interactions with Charles Tucker and his law firm, especially with regards to the advice given to her by Mr. Tucker as to the PPP loan and what the funds could be used for. Additionally, Ms. Stewart has knowledge of the purchase of the ████ ███████, Brandywine, Maryland ████ property (the "Brandywine Property"), and she has further knowledge concerning the transfers surrounding the Brandywine property.

2. **David Stewart**: He also has information regarding the Brandywine Property and the transfers surrounding the property.

3. **Khadijah Able**: She formerly worked with Charles Tucker as a paralegal or secretary for his law firm. She has heard conversations between Mr. Tucker and representatives with Cross River Bank regarding Ms. Stewart's PPP loan. She has knowledge as to the legal advice Mr. Tucker gave to Ms. Stewart in regards to her PPP loan.

4. **Charles Tucker**: He was hired by Ms. Stewart and 3 Bea's to represent them concerning issues with the PPP loan. Mr. Tucker has information on his advice to Ms. Stewart regarding the treatment of the PPP loan, and Mr. Tucker spoke to several representatives from Cross River Bank.

5. **Burton Sherbert:** He assisted Ms. Connie Stewart when she had issues with submitting her PPP loan. He also knew some of the interactions between Ms. Stewart and Charles Tucker.

**INTERROGATORY NO. 2:**  If you or anyone representing you at any time had any written or oral communications with Cross River Bank or any representative of Cross River Bank concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication.

**ANSWER:**   Ms. Stewart and her attorney at the time, Charles Tucker, spoke with a representative for Cross River Bank near the end of May, 2020. At that time, Mr. Tucker advised Ms. Stewart that she should keep that money and use it expand her business. Mr. Tucker further informed her that he would apply for forgiveness of the loan.

On May 3, 2021, Ms. Stewart communicated by email to "Spencer (PPP)" with email address "support@ppp-crb.zendesk.com. Ms. Stewart emailed the helpdesk in regards to the loan forgiveness and loan servicing. She was informed that it would take time before her loan became available to loan servicing third parties and for her to be able to submit a loan forgiveness.

Ms. Stewart spoke with a representative from Cross River Bank, a woman whose name she did not manage to catch, about how the PPP loan was calculated. This was when Ms. Stewart noticed that the amount she received was a lot higher than she anticipated. Ms. Stewart spoke with the representative to inquire if there was some sort of error. The woman stated that she would contact Ms. Stewart again but she did not. Ms. Stewart has a voice message from the representative.

**INTERROGATORY NO. 3:**  If you or anyone representing you at any time had any written or oral communications with any of the defendants herein and/or Burton Sherbert, or any representative thereof concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication.

**ANSWER:**  There are a number of written communication between Connie Stewart and Charles Tucker, who represented Ms. Stewart and 3 Bea's in regards to the repayment of the PPP loan. These will be provided in the document production. These messages may also include Burton Sherbert as he was also communicating with Charles Tucker.

**INTERROGATORY NO. 4:**  If you or anyone representing you at any time had any written or oral communications with a non-party or representative of a non-party concerning the subject matter of this litigation, with respect to each such communication, set forth the date and time, location and substance of the communication, the identity of any person representing you and anyone else who participated in the communication, and identify and produce any and all documents which evidence, refer or relate in any way to the communication

**ANSWER:** Ms. Stewart has conversed with Ms. Able, who is also assisting Ms. Stewart with her taxes. Ms. Able former worked for Mr. Tucker, so she is familiar with 3 Bea's and the issues regarding the PPP loan. Ms. Able provided McNamee Hosea, P.A. a written statement on January 8, 2022 in which she described her relationship with Ms. Stewart as well as an explanation to why Ms. Stewart spent the PPP loan and Mr. Tucker's involvement and advice. Further, Ms. Able came to the offices of McNamee Hosea on February 14, 2022, in which she was interviewed by Brent Ahalt in regards to any information she had regarding Mr. Tucker and the 3 Bea's PPP loan.

4

**INTERROGATORY NO. 5:**  Describe in detail where the loan funds issued by Cross River Bank, including but not limited to the $1,706,117 in Paycheck Protection Program ("PPP") loan funds issued to 3 Bea's Assisted Living LLC ("3 Bea's") on or about May of 2020 were transferred and/or spent, or otherwise disposed of, including but not limited to bank names and account numbers, dates and amounts deposited, payees, including but not limited to the seller of the residential property located at ██████████████, Brandywine, Maryland █████, and for each payee provide the form of payment, i.e. cash, check, bank check, etc., and include the amounts, dates of payment, check numbers, etc. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart paid $749,000.00 to purchase the Brandywine Property, which is where a majority of the funds were used. Samantha R. Minor was the grantor of the property, and Jamie Semler of Celebrate Settlement Services, LLC aided the parties in the closing of the Brandywine Property. Ms. Stewart also used the funds to pay the salary of her employees at 3 Bea's, bills for the business, and additional protective gear, such as gloves, masks, sanitation equipment. As indicated on the bank statements, as provided in the document production, funds were also transferred into the bank account of Diane's Plea, Cure Cancer Foundation Inc.

**INTERROGATORY NO. 6:**  Identify in accordance with the Instructions above all assets and bank and other accounts of 3 Bea's of any kind, by item, account, date purchased, the purchase price, the name and address of the mortgage holder, if any, and the current balance due on the mortgage, including but not limited to the real property at ██████████████, Lusby, Maryland █████. If an asset is a motor vehicle, provide the make and model and year of the motor vehicle; if there is a lien on the vehicle, provide the name and address of the lienholder; the license plate number and state issued by; and the Vehicle Identification Number.

**ANSWER:** The ██████████████, Lusby, Maryland █████ property is a rental, so it is not real property owned by 3 Bea's.

**INTERROGATORY NO. 7:**  Provide the names and addresses of all the owners of 3 Bea's and the percentage of ownership interest of each owner, and identify all other businesses in which any of the 3 Bea's owners have an ownership interest and the nature of the interest therein.

**ANSWER:** Connie Stewart is the sole owner of 3 Bea's.

**INTERROGATORY NO. 8:** Provide the names, addresses and telephone numbers of all employees of 3 Bea's since January 1, 2019 through the present; provide the annual salary of each employee; provide how much is paid to each employee on a monthly and annual basis since January 1, 2019; and provide the method of payment, i.e. check, direct deposit, cash. If any employees are paid based on weekly hours, explain the rate of compensation and wages paid by 3 Beas to the employee on a monthly and annual basis since January 1, 2019 through the present. Attach all relevant documents supporting your answer, including, but not limited to, W-2 forms, other tax forms, and paystubs for each employee from January 1, 2019 through the present. For each employee, state the job performed, start and end dates of employment, wages paid, and method of payment. Produce copies of all documents evidencing, referring, relating to and/or supporting your answer.

**ANSWER:**
1. Rudolph Brooks, ██████████, Washington, DC ████, salary: $27,195.00
2. Lakissha Butler, ██████████, White Plains, MD ████, salary: $9,302.40
3. Jeannette Chew, ██████████, Oxon Hill, MD████, salary: $4,674.00
4. Sandra Chew, ████████, Lusby, MD ██████, salary: $6,119.30
5. Kimberly Davenport, ██████████████, Lexington Park, MD ████, Salary: $24,500.00
6. Kena Gantt, ██████████████ California, MD ████, salary: $6003.25
7. Ethel Long, ████████████ Saint Leonard, MD ████, salary: $6,848.25
8. Sharon Long, ████████████, Huntingtown, MD ████, salary: $1,848.00
9. Deidrew Mackall, ████████████, Lusby, MD ████, salary: $894.40
10. Angel Mason, ████████████, Upper Marlboro, MD ████, salary: $135.00
11. Burton S. Sherbert, ██████████, Waldorf, MD ████, salary: $25,500.00
12. David T. Stewart, ████████████, Saint Leonard, MD ████, salary: $1,605.20
13. Ronald Whaley, ████████████, Indian Head, MD ████, salary: $657.00

The W-2s for these individuals are included in the document production.

**INTERROGATORY NO. 9:** Explain in detail why 3 Bea's applied for a PPP loan with Cross River Bank in or about April-May 2020.

**ANSWER:** 3 Bea's applied for a PPP loan to help supplement its income during the pandemic. At the time, the loan was helpful in assuring that 3 Bea's employees would be paid and that the assisted living facility would remain in operation, providing needed care for its elderly residents.

**INTERROGATORY NO. 10:**   Identify by name, address, and telephone number the person(s) who made attempts to enter and/or did enter, the initial on-line loan application to Cross River Bank. Identify who input the initial attempted loan application(s) at I.P. address 69.250.117.134 by name, address and telephone number and identify where the computer was physically located at the time of the initial attempted loan application(s). Identify who input the other attempted PPP loan application(s) at I.P. address 76.21.150.181 by name, address and telephone number and identify where the computer was physically located at the time of the other attempted PPP loan application(s).

**ANSWER:** Ms. Stewart did not know the specific IP address referenced in the above interrogatory. However, she believes she knows what this interrogatory refers to. When Ms. Stewart was attempting to complete her PPP loan, she was having issues uploading tax documents. Her son, Burton Sherbert, signed onto the application to see if he could upload the documents for Ms. Stewart. He was not located at the same physical address as Ms. Stewart, as he was staying with a friend, when he signed onto the application. Ms. Stewart was the individual who started the PPP loan, and her son Burton Sherbert was most likely the second IP address that logged onto the application.

**INTERROGATORY NO. 11:**   Identify by name, address, and telephone number the person(s) who made attempts to enter and/or did enter, the initial on-line loan application to Cross River Bank. Identify who input the initial attempted loan application(s) at I.P. address 69.250.117.134 by name,

address and telephone number and identify where the computer was physically located at the time of the initial attempted loan application(s). Identify who input the other attempted PPP loan application(s) at I.P. address 76.21.150.181 by name, address and telephone number and identify where the computer was physically located at the time of the other attempted PPP loan application(s).

**ANSWER:** Please see the above answer.

**INTERROGATORY NO. 12:**  Identify by name, address and telephone number the person(s) who made telephone calls to customer service Cross River Bank and/or Pearl Capital inquiring about the PPP loan. Include the dates of the telephone calls and state the purpose of the telephone calls.

**ANSWER:** Ms. Stewart and her attorney at the time, Mr. Tucker, spoke with a representative from Cross River Bank at the end of May, 2020. Mr. Tucker's law firm is located at , Hyattville, MD ▇▇▇, and his office's phone number is 301-577-1175.

**INTERROGATORY NO. 13:**  Set forth the factual basis for 3 Bea's' refusal to return $1,706,117 it received from Cross River Bank less the $20,680 it was allegedly eligible for when Cross River Bank repeatedly contacted 3 Bea's for return of the excess funds starting in the summer of 2020.

**ANSWER:** Ms. Stewart was advised by Mr. Tucker that she did not have to return the PPP loan. Ms. Stewart is not familiar with the PPP loan, other than that it was aid for business owners. She relied upon Mr. Tucker's advice, and he also stated to her that he would apply for loan forgiveness on her behalf, so she did not have to worry about the money.

**INTERROGATORY NO. 14:**  Set forth the factual basis for the statement in paragraph 95 of your Answer to Amended Complaint, listed under Affirmative and Negative Defenses, that Charles Tucker of the Tucker Moore Law Group advised 3 Bea's about PPP loan funds, and that 3 Bea's received advice from him that the loan would be forgiven, that 3 Bea's did not need to return the funds, and that the funds could be used to expand the business. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Mr. Tucker was Ms. Stewart's attorney. Ms. Stewart received the initial loan from Cross River Bank, she was concerned by the amount. However, Mr. Tucker advised her that it was her money, and that she could use the money to expand her business. Mr. Tucker did not advise Ms. Stewart that the money could only be used for the business's current expenses. Further, Mr. Tucker advised that most of the money would be forgiven. Ms. Stewart took Mr. Tucker's advice, as he was her attorney, and she subsequently used the PPP loan to invest in her business to expand it, which led to the purchase of the Brandywine Property.

**INTERROGATORY NO. 15:**  Set forth the factual basis for the statement in paragraph 12 of your Answer to Amended Complaint where you admit that Connie Stewart submitted an online application for a PPP loan on behalf of 3 Bea's, yet deny that she misrepresented 3 Bea's' average monthly payroll to be $1,266,967, and sought from Cross River Bank a PPP loan amount of $1,706,711. Include in your answer an identification, pursuant to the instructions above, of all

communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did file an online application for the PPP loan, but at the time that she filled out the paperwork, she only put in information that would have allowed her a PPP loan in the amount of $20,680. She did not seek the $1,706,711 from Cross River Bank.

**INTERROGATORY NO. 16:** Set forth the factual basis for the statement in paragraph 14 of your Answer to Amended Complaint where you admit that Connie Stewart signed a Borrower Application Form and that the documents referenced in paragraph 14 of the Amended Complaint state what they state, yet deny that she certified that the average monthly payroll of the business was $8,272; that the business had eight (8) employees; that the loan amount requested was $20,680; that the business was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC; that the loaned funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule; that she understood that if the funds were knowingly used for unauthorized purposes, the federal government could hold her legally liable, including for charges of fraud; and that the information provided in the application and in all supporting documents and forms was true and accurate in all material respects. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents

**ANSWER:** Ms. Stewart did sign the Borrower Application Form. She believes that the document speaks for itself, and that she signed acknowledging certain statements provided for on the form.

**INTERROGATORY NO. 17:** Set forth the factual basis for the statement in paragraph 15 of your Answer to Amended Complaint where you admit that Connie Stewart signed a Resolution to Borrow and that the documents referenced in paragraph 15 of the Amended Complaint state what they state, yet deny that on May 5, 2020, Connie Stewart certified on the Resolution to Borrow that she is an officer of 3 Bea's and among other things that the borrower is a duly formed entity which is, and at all times was, duly organized, validly existing and in good standing under the laws of the State of its organization, and that she also certified separately as president, manager or managing member of the borrower that she was duly elected, appointed, or employed by or for the borrower, and occupied the position set forth opposite her name, and that the resolution now stands of record on the books of the borrower. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the Resolution to Borrower. When she signed the document, she acknowledged certain statements and certified those statements with her signature.

**INTERROGATORY NO. 18:** Set forth the factual basis for the statement in paragraph 16 of your Answer to Amended Complaint where you deny that on May 5, 2020, Connie Stewart initialed the top section of the Resolution to Borrow which stated the loan principal was

$1,706,117, the Loan Date was 4/30/20, the Loan Number was ████7309 and that she was an officer of the borrower. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did initial the top section of the Resolution to Borrow but she did not understand the loan amount and under the impression that it would have been for the $20,680 amount.

**INTERROGATORY NO. 19:** Set forth the factual basis for the statement in paragraph 17 of your Answer to Amended Complaint where you admit that Connie Stewart signed a U.S. Small Business Settlement Sheet and that the documents referenced in paragraph 17 of the Amended Complaint state what they state, yet deny that Connie Stewart certified that the note amount was $1,706,117, that on May 5, 2020, Connie Stewart certified on the U.S. Small Business Settlement Sheet that all of the above statements were accurate to the best of her knowledge and that submitting false information to the government may result in criminal prosecution and fines, that the SBA Loan Number was ████7309, that the lender was Cross River Bank, that the loan type was a term loan, and that there would be full disbursement. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Settlement Sheet. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 20:** Set forth the factual basis for the statement in paragraph 18 of your Answer to Amended Complaint where you admit that Connie Stewart signed a U.S. Small Business Administration Note, and that the documents referenced in paragraph 18 of the Amended Complaint state what they state, yet deny that among numerous provisions contained in the Note is one which states "All individuals and entities signing this Note are jointly and severally liable," that the Note sets forth the amount of the loan as $1,706,117, that the date of the Note is April 30, 2020, that the SBA Loan Number is ████7309, that the SBA Loan Name is Three Bea's Assisted Living, that the lender is Cross River, that the interest rate is one (1) percent per annum, that the first numbered paragraph of the Note, titled "Promise to Pay," states: "[i]n return for the Loan, Borrower promises to pay to the order of Lender the amount of one million, seven hundred six thousand, one hundred seventeen Dollars, interest on the unpaid principal balance, and all other amounts required by this Note." Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Administration Note. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 21:** Set forth the factual basis for the statement in paragraph 19 of your Answer to Amended Complaint where you admit that the documents referenced state what they state, yet deny that the Note required the borrower to make payments of principal and interest following a six-month period of payment deferral consisting of eighteen (18) monthly consecutive principal and interest payments, beginning seven months from the date of initial disbursement, with interest at a rate of one (1) percent per annum payable to Cross River Bank. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart acknowledges that she signed the U.S. Small Business Administration Note. When she signed the document, she acknowledged certain statements and certified to those statements with her signature.

**INTERROGATORY NO. 22:** Set forth the factual basis for the statement in paragraph 21 of your Answer to Amended Complaint where you deny that 3 Bea's and Connie Stewart's PPP loan application documents, including electronically submitted materials, contained false and misleading statements, including, but not limited to, that 3 Bea's qualified for a PPP loan in the amount of $1,706,117. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart and 3 Bea's deny that they submitted false and misleading statements on their application. The Borrower Application Form indicates that when Ms. Stewart applied for the PPP loan, she stated that the monthly payroll was $8272 with 8 employees for the business. The submitted form does not contain any false information.

**INTERROGATORY NO. 23:** Set forth the factual basis for the statement in paragraph 22 of your Answer to Amended Complaint where you deny that having certified that 3 Bea's had eight (8) employees and an average monthly payroll of $ 8,272, Connie Stewart falsely certified repeatedly on various loan documents that 3 Bea's was eligible for a PPP loan of $1,706,117, yet the maximum PPP loan amount pursuant to the Rule's formula was $20,680 ($8,272 x 2.5). Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart did not falsely certify that 3 Bea's was eligible for a PPP loan of $1,706,711. Ms. Stewart was not aware with much detail how PPP loans were calculated or determined. When she consulted her attorney, Mr. Tucker, he informed her that the money was hers. Further, on April 30, 2020, Ms. Stewart sent an email to ppp.support@crossriver.com in regards to her SBA loan application. She received a generic response indicating that her application had been accepted, processed by Cross River, and ready to be submitted to SBA's E-Tran system. She was not informed of how much money she was to receive. As such, it is clear that Ms. Stewart did not fully understand any such maximum limit, and when she did question the amount she received, Ms. Stewart received advice that the money was hers.

10

**INTERROGATORY NO. 24:** Set forth the factual basis for the statement in paragraph 27 of your Answer to Amended Complaint where you deny that 3 Bea's and Connie Stewart are in default under the Note for falsely certifying on various loan documents that 3 Bea's was eligible for a $1,706,117 PPP loan. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** As stated in the prior answers, Ms. Stewart did not falsely certify that she was eligible for a $1,706,711 PPP loan. She submitted her Borrower Application with true and correct information. When Cross Bank presented documents with the $1,706,117 PPP loan amount, Ms. Stewart did not know that this was not the correct amount, nor did she know that there was anything improper with her application.

**INTERROGATORY NO. 25:** Set forth the factual basis for the statement in paragraph 29 of your Answer to Amended Complaint where you deny that 3 Bea's and Connie Stewart are in default of the Note due to failure to make required payments of principal and interest. Include in your answer an identification, pursuant to the instructions above, of all communications evidencing, referring or relating thereto, and all documents evidencing, referring or relating thereto, and attach copies of all such documents.

**ANSWER:** Ms. Stewart and 3 Bea's were counseled that they were not required to pay the PPP loan, and Ms. Stewart and 3 Bea's relied upon that information.

**CERTIFICATION**

I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby further certify that the copies of the reports annexed hereto rendered either by expert witnesses and/or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, either written or oral, are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.

_____

3 Bea's Assisted Living LLC

By: _____

      Connie Stewart
      Title: Owner

## CERTIFICATION

I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby further certify that the copies of the reports annexed hereto rendered either by expert witnesses and/or proposed expert witnesses are exact copies of the entire report or reports rendered by them; that the existence of other reports of said experts, either written or oral, are unknown to me and if such become later known or available, I shall serve them promptly on the propounding party.

Dated: _____

3 BEA'S ASSISTED LIVING LLC
a/k/a THREE BEA'S ASSISTED LIVING

By: _____

Name: _____

Title: _____

11

Respectfully submitted,

MCNAMEE HOSEA, P.A.


By: /s/ Brent M. Ahalt
      Brent M. Ahalt, Bar No. 13741
      6411 Ivy Lane, Suite 200
      Greenbelt, MD 20770
      301-441-2420
      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2022, a copy of the foregoing was served on all counsel of record in this proceeding, via first class mail to:

Blake W. Frieman, Esquire
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201

Jonathan J. Lerner, Esquire
*Pro Hac Vice*
Starr, Gern, Davidson & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640

/s/ Brent M. Ahalt_____
Brent M. Ahalt