**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| |
|---|---|
| CROSS RIVER BANK | \| |
| Plaintiff, | \|     Case No:   8:21-cv-3210-TJS |
| v. | \| |
| | \| |
| 3 BEA'S ASSISTED LIVING LLC, | \| |
| a Maryland Limited Liability Company, | \| |
| a/k/a THREE BEA'S ASSISTED LIVING, | \| |
| CONNIE STEWART, and | \| |
| DAVID STEWART JR. | \| |
| | \| |
| Defendants. | \| |
| | \| |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**CROSS RIVER BANK'S MOTION FOR SUMMARY JUDGMENT**

Dated:   February 13, 2023

Blake W. Frieman, Esq.
MD. Fed. No. 20959
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: 703.525.4000 | Fax: 703.525.2207
bfrieman@beankinney.com

Jonathan J. Lerner, Esq.
*Pro Hac Vice*
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200 | Fax: 973.364.1403
JLerner@starrgern.com

*ATTORNEYS FOR CROSS RIVER BANK*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

LEGAL ARGUMENT.................................................................................................3

  I.    SUMMARY JUDGMENT SHOULD BE GRANTED
       AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM ..............................................3

  II.   SUMMARY JUDGMENT SHOULD BE GRANTED
       AS TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM ..................................................6

  III.  SUMMARY JUDGMENT SHOULD BE GRANTED AS
       TO PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM .........................................9

  IV.  SUMMARY JUDGMENT SHOULD BE GRANTED
       AS TO PLAINTIFF'S CONVERSION CLAIM ...........................................................10

  V.   SUMMARY JUDGMENT SHOULD BE GRANTED AS
       TO PLAINTIFF'S FRAUD/MISREPRESENTATION CLAIM ....................................10

  VI.  SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
       PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM ................................13

  VII. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
       PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIM ...........................................14

CONCLUSION.........................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

<u>Allied Investment Corp. v. Jasen</u>,
  354 Md. 547 (1999) ...................................................................................10

<u>Berger v. Hi-Gear Tire and Auto Supply, Inc.</u>,
  257 Md. 470 (1970) ................................................................................15,16

<u>Berry & Gould, P.A. v. Berry</u>,
  360 Md. 142 (2000) .....................................................................................6

<u>Bourgeois v. Live Nation Entm't, Inc.</u>,
  430 Md. 14 (Md. 2013)................................................................................9

<u>County Commissioners v. J. Roland Dashiell & Sons, Inc.</u>,
  358 Md. 83 (2000) .......................................................................................6

<u>General Motors Acceptance Corp. v. Daniels</u>,
  303 Md. 254 (1985) .....................................................................................5

<u>Hill v. Cross Country Settlements, LLC</u>,
  402 Md. 281 (2007) ...................................................................................6,9

<u>L&H Enterprises, Inc. v. Allied Bldg. Products Corp.</u>,
  88 Md.App. 642 (1991)..............................................................................5,6

<u>Owens-Illinois, Inc. v. Cook</u>,
  380 Md. 468 (2005) .....................................................................................5

<u>Tracey v. First Amended Title Ins. Co.</u>,
  935 F.Supp. 2d 826 (D. Md. 2013)............................................................9

<u>Wellcraft Marine Corp. v. Roader</u>,
  314 Md. 186 (1988) ................................................................................15,16

**Statutes and Rules**

The Maryland Uniform Fraudulent Conveyance Act ("MUFCA")............................16

The MUFCA, at Md. Commercial Law Code Ann. § 15-204 ....................................16

The MUFCA, at Md. Commercial Law Code Ann. § 15-206 ....................................16

**Other Authorities**

1 Fowler V. Harper et al., <u>The Law of Torts</u>, § 2.13, at 2:56 (3d ed. 1986) ..............................10

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") ...............................3

## PRELIMINARY STATEMENT

This brief is submitted on behalf of plaintiff, Cross River Bank ("Cross River") in reply to defendants' opposition papers and in further support of plaintiff's motion for summary judgment on all counts.

As has been established in plaintiff's initial brief and motion papers, there is concrete evidence to support summary judgment on various claims in favor of Cross River to recover over $1,706,117 in funds issued to 3 Bea's Assisted Living LLC ("3 Bea's") in connection with the Paycheck Protection Program ("PPP") loan application. The loan documents and defendants' bank records establish receipt of the funds by defendants, and the immediate use and transfer of the funds by defendant Connie Stewart with the intention to spend the funds on herself, her family members, and other entities she controlled.

In defendants' opposition papers, including Connie Stewart's affidavit ("Stewart Aff."), it is admitted that defendant 3 Bea's only had a monthly payroll of $8,272. See Stewart Aff., ¶ 9. Accordingly, it is undisputable that defendant 3 Bea's was eligible for a maximum PPP loan amount of $20,680. In addition, defendant Connie Stewart admitted in her affidavit that she electronically signed all of the loan documents on behalf of 3 Bea's. See Stewart Aff., ¶ 13. In addition, defendant Connie Stewart admitted in her affidavit that she "received funding in my account of $1,706,117." See Stewart Aff., ¶ 17. Although defendant Connie Stewart denies that she inserted the $1,706,117 amount into the loan application, it is patently clear from the loan documents (see plaintiff's initial motion papers, Affidavit of Philip Goldfeder ("Cross River Aff.") **Ex. 1**) that the loan amount was $1,706,117.   This amount appears repeatedly throughout the loan documents. Moreover, the Note itself, which is the written agreement that contains the promise to repay the loan, is unambiguous regarding the loan amount. The terms of the Note also provide that

1

the signatory, defendant Connie Stewart, is jointly and severally liable along with 3 Bea's.   The Note expressly provides that "[a]ll individuals and entities signing this Note are jointly and severally liable."   See Statement of Undisputed Material Facts, ¶ 18, Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 5, ¶ 9A.   Therefore, she is individually liable according to the express terms of the Note, as is 3 Bea's.   Accordingly, defendants' assertion that defendant Connie Stewart cannot be held individually liable is without any basis and her liability is indisputable.

Moreover, it is not a legitimate defense that Connie Stewart was supposedly advised by her attorney that she could use the funds to "expand 3 Bea's' business" (see Stewart Aff., ¶ 19).   But in any event the facts are clear that the funds were not used for this purpose.   See plaintiff's initial brief, pg. 4, which summarizes the use of the funds for Connie Stewart herself, her family members, and other entities she controlled.   As previously stated, on May 7, 2020, the day the funds totaling $1,706,117 were wired by Cross River into 3 Bea's primary bank account, Connie Stewart immediately transferred $1,100,000 to three other bank accounts, none of which belonged to 3 Bea's Assisted Living LLC, and issued an additional $400,000 to herself in the form of two large cashier's checks issued to "Connie B. Stewart" in the amounts of $250,000 and $150,000. See Affidavit of Counsel ("Counsel Aff."), **Ex. 4**.   In short, as explained and documented in plaintiff's initial motion papers, on May 7, 2020, the day the money was received from Cross River, $1,500,000 was either transferred to non-3 Bea's bank accounts or withdrawn in the form of cashier's checks payable to Connie Stewart. See plaintiff's initial brief for further details, if needed.   As also pointed out in plaintiff's initial brief, the use of the funds for the purchase of the home in Brandywine, Maryland for $749,000, which defendant Connie Stewart admits doing in her Affidavit (see ¶ 20), would not have qualified for loan forgiveness in any event, since PPP

loans may only be used for payroll, mortgage or rent payments, utilities, and limited other expenses, and only on behalf of the borrowing entity -- in this case, 3 Bea's.   See Interim Final Rule relating to implementation of Sec. 1102 and 1106 of the CARES Act, 85 F.R. 20811 (April 15, 2020).

Based on the foregoing and the legal issues addressed below, and in our initial summary judgment brief, it is respectfully submitted that plaintiff's motion for summary judgment should be granted in all respects.

**LEGAL ARGUMENT**

**I.      SUMMARY JUDGMENT SHOULD BE GRANTED
         AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Defendants Connie Stewart and 3 Bea's cannot evade the responsibilities and obligations of signing a promissory note and have set forth no basis for doing so.   Connie Stewart admits in her opposition papers that she signed all the loan documents, including the promissory note ("Note").   See Stewart Aff., ¶ 13.   Connie Stewart on behalf of herself and 3 Bea's signed the Note in the amount of $1,706,117 on May 5, 2020.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 6.   Connie Stewart and 3 Bea's also admit signing the Note.   See Counsel Aff., **Ex. 2**, Answer, ¶ 18, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 20 (Connie Stewart admits signing the Note).[1]   Connie Stewart admitted in her affidavit that she "received funding in my account of $1,706,117."   See Stewart Aff., ¶ 17.

---

[1] Connie Stewart and 3 Bea's also admitted signing the other loan documents on May 5, 2020, including the Borrower Application Form, the Resolution to Borrow, the Settlement Sheet, as well as the Note.   See Counsel Aff., **Ex. 2**, Answer to Amended Complaint, ¶¶ 14, 15, 17 and 18, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. Nos. 16, 17, 18, 19 and 20.   In addition, Connie Stewart and 3 Bea's admitted they submitted an online application for a PPP loan.   See Counsel Aff., **Ex. 2**, Answer to Amended Complaint, ¶ 12.

The Note at page 1 expressly states numerically and in words in ¶ 1 entitled "PROMISE TO PAY": "[i]n return for the Loan, Borrower promises to pay to the order of Lender the amount of one million, seven hundred six thousand, one hundred seventeen Dollars, Interest on the unpaid principal balance, and all other amounts required by this Note."   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 1 , ¶ 1.   This, set forth in the first page and first numbered paragraph of the Note, makes it clear the amount Connie Stewart and 3 Bea's were borrowing was $1,706,117, along with interest and any other amounts required by the Note, and she signed the Note.   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 1 , ¶ 1, p. 6 (signature page).   Therefore, defendants' assertion that there was no mutual assent is definitively refuted by the documents.

The $1,706,117 loan amount was also stated on the Resolution to Borrow (signed by Connie Stewart), the Settlement Sheet (signed by Connie Stewart), and the Cross River Small Business Administration (SBA) Paycheck Protection Program Loan document, as well as on the Note (signed by Connie Stewart).   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Resolution to Borrow, p. 1, Settlement Sheet, p. 2, Cross River Small Business Administration (SBA) Paycheck Protection Program Loan document, p. 1, Note, p. 1.   That the Borrower Application form set forth a loan amount of $20,680 on the initial page only highlights the extent of the falsity of the loan application filed by Connie Stewart. It is simply not credible that Connie Stewart believed she was borrowing only $17,061, as she states in her affidavit.   See Stewart Aff., ¶ 14.

Nor can Connie Stewart argue she is not individually liable for the loan.[2]   The Note expressly provides that "[a]ll individuals and entities signing this Note are jointly and severally

---

[2] Cross River does not assert in its Amended Complaint that David Stewart is liable for its breach of contract cause of action.

liable." <u>See</u> Statement of Undisputed Material Facts, ¶ 18, Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Note, p. 5, ¶ 9A. Therefore, she is individually liable according to the express terms of the Note, as is 3 Bea's. <u>See</u> <u>Owens-Illinois, Inc. v. Cook</u>, 380 Md. 468, 496-497 (2005), <u>quoting</u> <u>General Motors Acceptance Corp. v. Daniels</u>, 303 Md. 254, 261 (1985): "when the contractual language is clear and unambiguous . . . parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract."

In reliance on the Note, Cross River wired $1,706,117 into 3 Bea's Bank of America account x1025 on May 7, 2020. <u>See</u> Counsel Aff., **Ex. 4,** relevant portion of 3 Bea's Assisted Living, LLC account x1025 May 2020 bank statement. Moreover, 3 Bea's and Connie Stewart had already admitted that Cross River funded the loan in the amount of $1,706,117 previously. <u>See</u> Counsel Aff., **Ex. 1,** Amended Complaint, ¶¶ 23 and 24, and **Ex. 2**, Answer to Amended Complaint, ¶¶ 23 and 24. Mutual assent (offer and acceptance), an agreement definite in terms, and consideration (Connie Stewart's and 3 Bea's execution of the Note in exchange for the funds) were all present to create a binding contractual obligation on both Connie Stewart and 3 Bea's.

The case relied upon by Defendants in their opposition papers can be easily distinguished because it concerned enforcement of personal guaranties by corporate officers contained in clauses within a building materials supplier's credit application. <u>See</u> <u>L&H Enterprises, Inc. v. Allied Bldg. Products Corp.</u>, 88 Md.App. 642 (1991). The Court of Special Appeals reversed summary judgment granted by the trial court against both the company and the guarantors because the purported guaranty language was ambiguous, and because it lacked elements necessary to render it a negotiable instrument and remanded for further proceedings. <u>See</u> <u>L&H</u>, *supra*, 88 Md.App. at 643-646, 652-654. Here, unlike the ambiguous personal guaranty language contained in clauses within the body of a credit application for building materials, there is a signed promissory

note with the highly explicit provision: "[a]ll individuals and entities signing this Note are jointly and severally liable."   See Cross River Aff., **Ex. 1**, Note, p. 5, ¶ 9A.

3 Bea's and Connie Stewart have admitted receiving Cross River's requests for return of the funds. They have failed to return the funds and make any required payments in accordance with the terms of the Note.   See Statement of Undisputed Material Facts, ¶¶ 21-24 and cited exhibits.   The failure to return the funds as well as the failure to make any payments is a clear breach of the contract/breach of the Note.   It is respectfully submitted that summary judgment be granted on Cross River's breach of contract claim.

## II.      SUMMARY JUDGMENT SHOULD BE GRANTED
##          AS TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM

All three elements of unjust enrichment have already been proven by Cross River.   The doctrine of unjust enrichment is defined by three elements: (1) "benefit conferred upon the defendant by the plaintiff," (2) "[a]n appreciation or knowledge by the defendant of the benefit," and (3) "acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."   See Hill v. Cross Country Settlements, LLC, 402 Md. 281, 294 (2007), quoting Berry & Gould, P.A. v. Berry, 360 Md. 142, 151-152 (2000), quoting County Commissioners v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 95 n.7 (2000).

As to the first element, Defendants received a benefit from Cross River in the form of $1,706,117 in funds.   See Statement of Undisputed Material Facts, ¶¶ 18-19, and Counsel Aff., **Ex. 4**, relevant portions of 3 Bea's' account x1025 May 2020 bank statement, **Ex. 1**, Amended Complaint, ¶¶ 23 and 34, and **Ex. 2**, Answer to Amended Complaint, ¶¶ 23 and 34 (Defendants admitted receiving $1,706,117).   Connie Stewart admitted receiving the funds in her affidavit.

<u>See</u> Stewart Aff., ¶ 17.   In their opposition brief, defendants have not denied this element has been proven.   <u>See</u> defendant's opposition brief, pp. 7-8.

As to the second element, defendants knew about the benefit as indicated in bank records subpoenaed from Bank of America.   On May 7, 2020, Connie Stewart transferred $1,500,000 of the $1,706,117 received to non-3 Bea's bank accounts (namely her own personal bank account, an entity she controlled, Diane's Plea Cure Cancer Foundation Inc.'s bank account, and her son, Burton S. Sherbert's bank account) and withdrew funds in the form of cashier's checks payable to herself.   Four days later, on May 11, 2020, more inappropriate transfers were made, and over the next year or so, even more transfers were made, combined with massive expenditures on non-qualifying expenses, including her purchase of an expensive home in Brandywine, Maryland for $749,000.   <u>See</u> Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 80-82, **Ex. 2,** Answer to Amended Complaint, ¶¶ 80-82 (where Defendants "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House" and "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House with funds originating from the PPP funds."), **Ex. 5**, Deed for Brandywine Property dated September 25, 2020 and related purchase documents, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 5, (where Connie Stewart admits she "paid $749,000 to purchase the Brandywine Property, which is where a majority of the funds were used.").   Defendants have not denied this element has been proven.   <u>See</u> defendant's opposition brief, pp. 7-8.

As to the third element, Cross River has proven that retention of the benefit is clearly inequitable.   Cross River requested return of the funds, including numerous unanswered communications, but Connie Stewart failed and refused to return the funds.   <u>See</u> Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 41, **Ex. 2**, Answer to Amended Complaint, ¶ 41, and **Ex. 3**, Connie

Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 13.   On May 20, 2020, Cross River issued a formal recall request of the funds to Bank of America, 3 Bea's bank.[3]   See Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 25 and 39, and Cross River Aff., **Ex. 2**, Indemnification Agreement issued to Bank of America.   Cross River has proven that the circumstances show that it is clearly inequitable and improper for Defendants to retain the funds and the benefits thereof.

It is completely without merit for defendants to argue they were not afforded the chance to "reject the benefit."   Defendants were not only afforded the opportunity to "reject the benefit," they were contacted by Cross River regarding return of the funds and Cross River issued a recall request to 3 Bea's bank.   Defendants' contrived argument is eviscerated by the fact that Connie Stewart immediately withdrew and transferred the funds on May 7, 2020, the day the money was received from Cross River, precisely to hide the funds, distribute them to herself, to family members, and to other entities she controlled, and to avoid a recall or attachment.   Four days later she created a new entity, Three Bea's Incorporated, and on the same date opened three new bank accounts for the new entity and deposited hundreds of thousands of dollars into those new bank accounts from the funds.   Clearly it was dishonest to create a new entity within days of receipt of the loan funds and then to transfer hundreds of thousands of dollars to it.[4]

Cross River has suffered a direct loss as a result of Connie Stewart and 3 Bea's unjustly retaining (as well as transferring and spending) the funds. Cross River demanded return of the funds and issued a recall request to Bank of America.   "A person who received a benefit by reason of infringement of another person's interest, or of loss suffered by the other, owes restitution to

---

[3]   Ultimately only $4,717.53 was recovered.

[4]   On May 11, 2020, $241,555.25 was transferred out of the funds from 3 Bea's bank account x1025 to Three Bea's Incorporated's new Bank of America account x9366; a cashier's check payable to Connie B. Stewart out of the funds in the amount of $150,000 was deposited to open a second new Three Bea's Incorporated bank account x9379; and a $750,000 "Counter Credit" consisting of $750,000 was used to open a third new Three Bea's Incorporated bank account x3268.   See Counsel Aff., **Ex. 4**, and **Ex. 9**.

him in the manner and amount necessary to prevent unjust enrichment."   Hill, *supra*, 402 Md. at 296.

Defendants' argument that they were allegedly ill advised by their counsel to keep the funds does not excuse defendants or impact the unjust enrichment claim.   It is respectfully submitted that summary judgment be granted as to Cross River's unjust enrichment claim.

### III.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM

Defendants' argument on this claim is based on their argument concerning the unjust enrichment claim and is without any merit.   Clearly, 3 Bea's and Connie Stewart have obtained funds that they had no right to have.   As defendants rely on the identical argument they made for the unjust enrichment claim, Cross River relies on its arguments in Point II above.

Under Maryland law, an action for money had and received has long been available to recover money obtained by fraud or false pretense.   See Tracey v. First Amended Title Ins. Co., 935 F.Supp. 2d 826, 846 (D. Md. 2013), citing Bourgeois v. Live Nation Entm't, Inc., 430 Md. 14, 48 (Md. 2013).   It is also available to recover money paid under mistake of fact or law, as well as paid upon an unexecuted illegal contract or paid upon an executed illegal contract.   See Bourgeois, *supra*, 430 Md. at 48.

Due to her false statements in certifying on various loan documents that she was eligible for a PPP loan in the amount of $1,706,117, 3 Bea's and Connie Stewart have come into wrongful possession of $1,706,117.   It is respectfully submitted that summary judgment be granted as to Plaintiff's money had and received claim.

**IV.    SUMMARY JUDGMENT SHOULD BE GRANTED
         AS TO PLAINTIFF'S CONVERSION CLAIM**

A conversion claim for recovery of funds may be made when a plaintiff seeks to recover "funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." Allied Investment Corp. v. Jasen, 354 Md. 547, 565 (1999), quoting 1 Fowler V. Harper et al., The Law of Torts, § 2.13, at 2:56 (3d ed. 1986).   The funds at issue fall into several categories of the conversion claim as they were wrongfully obtained and wrongfully retained.   They fall into another category because they were also diverted by means of transfers out of 3 Bea's account to Connie Stewart, family members, and other entities she controlled.   Defendants have engaged in a distinct act of ownership or dominion over the personal property of another, Cross River.   It is respectfully submitted that summary judgment be granted on Cross River's conversion claim.

**V.     SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
         PLAINTIFF'S FRAUD/MISREPRESENTATION CLAIM**

Cross River reasonably and justifiably relied to its detriment on false certifications and statements made by Connie Stewart and 3 Bea's on the loan application and loan documents certifying eligibility for a grossly inflated PPP loan in the amount of $1,706,117 and their falsely certifying that the funds would be used for eligible purposes.

Connie Stewart and 3 Bea's actions satisfy the first element of civil fraud, that the defendant made a false representation to the plaintiff.   Connie Stewart falsely represented, by means of a statement on p. 1 of the Borrower Application Form, that the purpose of the loan was for "payroll, lease/mortgage interest, utilities, and food, household supplies, etc."   She then signed a certification on penalty of fraud against the United States government, that the funds would be used for payroll, lease/mortgage interest payments and utilities payments in accordance with the

PPP Rule, which they were not.   She also certified that all the information on the loan application and loan documents was true and correct in all material respects, also on penalty of federal criminal law.   <u>See</u> Cross River Aff., **Ex 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2 (including certifications on p. 2); Counsel Aff., **Ex. 1**, Amended Complaint, ¶ 14, **Ex. 2**, Answer to Amended Complaint, ¶ 14 (Connie Stewart admits signing the Borrower Application Form), and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 16 (Connie Stewart admits signing the Borrower Application Form).   As summarized above, and in plaintiff's moving brief at pp. 4-7, Connie Stewart transferred the funds out of the 3 Bea's bank account and used the funds for herself, her son, for other entities she controlled, and for the purchase of an expensive new home for herself.[5]   <u>See</u> Statement of Undisputed Material Facts, ¶¶ 28-38, and Counsel Aff., **Exs. 4**, **8**, **9**, **and 10**.   She admits she purchased the home using PPP loan funds.   <u>See</u> Stewart Aff., ¶¶ 19-20; <u>see also</u> Counsel Aff., **Ex. 1**, Amended Complaint ¶ 82, **Ex. 2**, Answer, ¶ 82 (Defendants admit Connie Stewart purchased the Brandywine House with funds originating from PPP loan funds), and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 5 (Connie Stewart   paid $749,000 to purchase the Brandywine House).   The voluminous bank records proving the many transfers are irrefutable.

Connie Stewart, on behalf of herself and 3 Bea's, also falsely represented that she was seeking a loan in the amount of $20,680, but certified on three loan documents that the loan principal amount was $1,706,117.   Connie Stewart has admitted to signing the Note, at p. 6 (which

---

[5] Connie Stewart certified that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.   <u>See</u> Cross River Aff., **Ex 1**, Loan Application/Loan Documents, Borrower Application Form, p. 2.   She also certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.   I understanding that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law . . . "   <u>See</u> <u>ibid.</u>

she executed in the amount of $1,706,117), signing and initialing the Resolution to Borrow, at pp. 1-2 (where she certified that 3 Bea's was eligible for a PPP loan of $1,706,117), and signing the Settlement Sheet, at p. 2 (where she certified that the Note amount was $1,706,117).   See Cross River Aff., **Ex. 1**, Loan Application/Loan Documents, Resolution to Borrow, pp. 1-2, Settlement Sheet, p. 2, and Note, p. 1 and 6; Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 15, 17 and 18, **Ex. 2**, Answer to Amended Complaint ¶¶ 15, 17 and 18 (Connie Stewart admitted signing the Resolution to Borrow, the Settlement Sheet, and the Note), and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. Nos. 17, 19 and 20 (Connie Stewart admitted signing the Resolution to Borrow, the Settlement Sheet, and the Note).

Her claims in her affidavit that the process was confusing and that she did not believe she was seeking a loan in the amount of $1,706,117 (but rather $17,061) are simply not credible defenses, especially in light of the fact that she failed and refused to return $1,706,117 in funds despite being asked to and despite a recall request to her bank.   She transferred the funds aggressively on the receipt date, May 7, 2020, May 11, 2020 and subsequently, clearly in order to conceal and retain them.   Her claims that Cross River assisted her in processing the application do not, even if true, sanction the misrepresentations she perpetrated.

Cross River has also proven the second element, the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to the truth. Connie Stewart knew, or was recklessly indifferent about the fact that she would not be spending the funds on payroll and permissible expenses, nor could she, because the funds far exceeded 3 Bea's expenses.   In her affidavit, Connie Stewart admitted 3 Bea's monthly payroll was $8,272. See Stewart Aff., ¶ 12.   Furthermore, she knew that she was signing loan documents to receive $1,706,117, not $20,680, and not $17,061, or if she did not know, she was recklessly indifferent

to the dollar amount she was certifying on the documents.[6]   Cross River has also proven the third element, the misrepresentation was made for the purpose of defrauding the plaintiff.   Connie Stewart clearly intended to defraud Cross River, as evidenced by the immediate transfers of the funds to herself, her son, and other entities she controlled to evade Cross River, and by so doing, made it clear she would not be spending the funds for permissible purposes, as she had certified. Cross River has also proven the fourth element, the plaintiff relied on the misrepresentation and had the right to rely on it.   Cross River relied on Connie Stewart's and 3 Bea's certifications on the loan application and loan documents that she would be receiving $1,706,117 and that she would use the funds for permissible purposes.   Cross River has also proven the fifth element, the plaintiff has suffered compensable injury as a result of the misrepresentation, because Connie Stewart and 3 Bea's have failed and refused to return the funds procured by fraud.

It is respectfully submitted that summary judgment be granted on Cross River's fraud/misrepresentation claim.

## VI.      SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM

Defendants only challenge the fourth element of negligent misrepresentation: that the plaintiff justifiably takes action in reliance on the false statement that was asserted negligently. Connie Stewart on behalf of herself and 3 Bea's falsely represented that that the funds would be used for 3 Bea's payroll, lease/mortgage interest payments and utilities payments in accordance with the PPP Rule, and they were not.   As stated in the discussion of the fraud/misrepresentation

---

[6] If she were truly unaware she was applying for $1,706,117, why didn't she contact Cross River immediately upon the receipt of the funds into 3 Bea's bank account to return them.   Why did she instead on May 7, 2020 (the date the funds were wired into 3 Bea's bank account) transfer $1.1 million dollars to three other bank accounts, none of which belonged to 3 Bea's, (namely her own personal bank account, an entity she controlled, Diane's Plea, Cure Cancer Foundation Inc.'s bank account, and her son, Burton S. Sherbert's bank account) and on the same date obtain two large cashier's checks payable to herself in the amounts of $250,000 and $150,000?

claim above, Connie Stewart, on behalf of herself and 3 Bea's, also falsely represented that she was seeking a loan in the amount of $20,680, but certified on three loan documents that the loan principal amount was $1,706,117.   As stated above, Connie Stewart specifically certified by means of a certification on penalty of fraud that the funds would be used for payroll, lease/mortgage interest payments and utilities payments in accordance with the PPP Rule and she also certified that all the information on the loan application and loan documents was true and correct in all material respects, also on penalty of federal criminal law.   <u>See</u> Cross River Aff., **Ex 1**, Loan Application/Loan Documents, Borrower Application Form, pp. 1-2 (including certifications on p. 2).   Based on the foregoing, as well as Connie Stewart's signatures on the other loan documents that the loan amount was $1,706,117, Cross River justifiably took action by processing the loan and wiring the funds to 3 Bea's.   Moreover, Cross River was not contributorily negligent because it reasonably relied on the certifications and statements provided by Connie Stewart in the loan application and loan documents.

It is respectfully submitted that summary judgment be granted on Cross River's negligent misrepresentation claim.

## VII.  SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S FRAUDULENT CONVEYANCE CLAIM

Connie Stewart purchased an expensive home for herself in Brandywine, Maryland ("Brandywine Property") for $749,000 using the PPP loan funds.   <u>See</u> Counsel Aff., **Ex. 1**, Amended Complaint, ¶¶ 80-82, **Ex. 2,** Answer to Amended Complaint, ¶¶ 80-82 (where Connie Stewart and 3 Bea's "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House" and "admit that Ms. Stewart on behalf of 3 Bea's purchased the Brandywine House with funds originating from the PPP funds."), **Ex. 5**, Deed for Brandywine Property dated September

25, 2020 and related purchase documents, and **Ex. 3**, Connie Stewart's Answers to Cross River Bank's Interrogatories, Ans. No. 5, (where Connie Stewart admits she "paid $749,000 to purchase the Brandywine Property, which is where a majority of the funds were used.").

Defendants' opposition brief misstates that 3 Bea's purchased the Brandywine Property, since Connie Stewart personally purchased the Brandywine Property.  <u>See</u> Counsel Aff., **Ex. 5**, Deed for Brandywine Property dated September 25, 2020 and related purchase documents.   Then she transferred title to the house twice within ten months after she purchased it on September 25, 2020 for no consideration, which is a clear badge of fraud.[7]

Connie Stewart's statement that she transferred title for convenience and her health is not a legitimate defense to a fraudulent conveyance.   Nor is it a defense that she has indefinite plans in the future to use the Brandywine Property for business purposes, if she can obtain a license. <u>See</u> Stewart Aff., ¶¶  20-21.   Nor is it a defense that she acted on the advice of her attorney, Charles Tucker.   <u>See</u> Stewart Aff., ¶ 19.

To prove an intentional fraudulent conveyance, a creditor may rely on the presence of any number of nine "generally recognized" indicia of fraud sufficient to support a finding of a fraudulent conveyance.   <u>See</u> <u>Wellcraft Marine Corp. v. Roader</u>, 314 Md. 186, 189-90 (1988) (<u>citing</u> <u>Berger v. Hi-Gear Tire and Auto Supply, Inc.</u>, 257 Md. 470, 476 (1970)).   These "badges of fraud" include, but are not limited to: 1) insolvency or indebtedness of the transferor; 2) lack of consideration for the conveyance, 3) relationship between the transferor and transferee, 4) the pendency or threat of litigation, 5) secrecy or concealment, 6) departure from the usual means of

---

[7] On or about December 4, 2020, Connie Stewart conveyed the Brandywine Property to her sons, David Stewart, Jr. and Burton Sherbert for no consideration.   <u>See</u> Counsel Aff., **Ex. 6**, December 4, 2020 Grant Deed.   On or about August 30, 2021, David Stewart, Jr. and Burton Sherbert conveyed the Brandywine Property to David Stewart, Jr. and Connie Stewart for no consideration.   <u>See</u> Counsel Aff., **Ex. 7**, August 30, 2021 Grant Deed.

business, 7) transfer of the debtor's entire estate, 8) reservation of benefit to the transferor, and 9) retention by the debtor of possession of the property.   <u>Berger</u>, *supra*, 257 Md. at 476.

Connie Stewart is indebted to Cross River for more than $1.8 million dollars (the amount funded plus interest and late fees).   <u>See</u> Statement of Undisputed Material Facts, ¶¶ 2, 8 and Cross River Aff., **Ex. 1**, Loan Application/Loan Documents.   No consideration was paid for the transfers.   <u>See</u> Counsel Aff., **Ex. 6**, December 4, 2020 Grant Deed, **Ex. 7**, August 30, 2021 Grant Deed.   There was a close relationship between transferee and tranferors: the first transfer was made to Connie Stewart's sons Burton Sherbert and David Stewart, Jr.; the second back to Connie Stewart and her son David Stewart, Jr.   It was highly foreseeable there would be litigation arising out of the failure to pay back the funds, and this lawsuit was filed in December of 2021, only a few months after the second transfer.   Connie Stewart has retained possession of the Brandywine Property because she resides there.   <u>See</u> Counsel Aff., **Ex. 1**, Amended Complaint ¶ 3 (stating Connie Stewart's address is 13500 Danielle Circle, Brandywine, Maryland), and **Ex. 2**, Answer to Amended Complaint ¶ 3 (Connie Stewart admits she resides at the Brandywine, Maryland address).

Five of the indicia of fraud set forth in <u>Wellcraft Marine</u> have already been demonstrated. These indicia demonstrate a violation of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), and even if there are not sufficient facts to support a finding of intentional fraudulent conveyance, there is sufficient undisputed evidence for a finding of constructive fraudulent conveyance pursuant to Md. Commercial Law Code Ann. § 15-204, and -206 which state that a conveyance made without fair consideration is fraudulent if it renders the transferor insolvent or if the transferor intends or believes he or she will incur debts beyond his or her ability to pay as they mature, respectively.

It is respectfully requested that summary judgment be granted as to Cross River's fraudulent conveyance claim.

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that Cross River's Motion for Summary Judgment be granted on all counts.


Dated:   February 13, 2023

   /s/   Blake W. Frieman
Blake W. Frieman, MD. Fed. No. 20959
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: 703.525.4000 | Fax: 703.525.2207
bfrieman@beankinney.com


   /s/   Jonathan J. Lerner
JONATHAN J. LERNER, ESQ.
*Pro Hac Vice*
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200 | Fax: 973.364.1403
JLerner@starrgern.com

*ATTORNEYS FOR CROSS RIVER BANK.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2023, I electronically filed the foregoing using the CM/ECF system, thus causing an electronic copy to be served upon all registered users in this case.

   /s/ Jonathan J. Lerner
            Jonathan J. Lerner

17