IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CROSS RIVER BANK, | * | |
| Plaintiff, | * | |
| | * | Case No. TJS-21-3210 |
| v. | * | |
| 3 BEA'S ASSISTED LIVING LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff Cross River Bank's Motion for Summary Judgment ("Motion") (ECF No. 29).[1] Having considered the parties' submissions (ECF Nos. 29, 32, 38 & 39), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.     Introduction**

Plaintiff filed this lawsuit against Defendants 3 Bea's Assisted Living LLC ("3 Bea's), Connie Stewart, and David Stewart, Jr. to recover for Defendants' purported failure to repay a loan, in violation of the parties' contract, and to obtain relief in connection with Defendants' alleged fraudulent conveyance of real property. ECF No. 9. Discovery has been completed, the parties' settlement efforts have failed, and the Motion is ripe for decision.

---

[1] This case is assigned to me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). ECF No. 30.

## II. Discussion

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B. Factual Background

Unless otherwise indicated, the following facts are not in dispute. To the extent that any facts are in dispute, they will be viewed in the light most favorable to Defendants. *Scott*, 550 U.S.

at 380 ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

Plaintiff Cross River Bank is a New Jersey business entity with its principal place of business in New Jersey. At all relevant times, 3 Bea's was a Maryland limited liability company with its principal place of business in Maryland.[2] Connie Stewart was the principal, owner, officer, managing member, and registered agent for 3 Bea's. David Stewart, Jr. is Connie Stewart's son. ECF No. 29-1 at 1-2.

On April 23, 2020, Connie Stewart submitted an online application, on behalf of 3 Bea's, for a Paycheck Protection Program loan from Plaintiff.[3] The first page of the loan application stated that the 3 Bea's "average monthly payroll" amounted to $8,272, which allowed for a loan request of $20,680 (the product of 2.5 times the average monthly payroll). ECF No. 29-5 at 7. Plaintiff approved the loan request, but did so in the amount of $1,706,117 instead of $20,680. This is more than 82 times the loan amount that 3 Bea's qualified for under the PPP. The parties dispute the reason that Plaintiff funded the loan in this amount. It appears that it was Plaintiff's error in the

---

[2] According to the Affidavit that Connie Stewart filed as part of Defendants' opposition brief (ECF No. 28-2), Connie Stewart was the owner and manager of 3 Bea's "until October 15, 2021 when that entity was forfeited." *Id.* ¶ 2. She is "currently the owner and president of Three Bea's Incorporated, which was incorporated with the State of Maryland on May 11, 2020." *Id.* ¶ 3.

[3] On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the COVID-19 pandemic. *See Mod. Perfection, LLC v. Bank of Am., N.A.*, No. LKG-22-2103, 2023 WL 5433006, at *4 (D. Md. Aug. 22, 2023) (citing Coronavirus Aid, Relief and Economic Security Act, Publ. L. No. 116-136, 134 Stat. 281 (2020)). "The CARES Act allocated $349 billion to the Small Business Administration ("SBA") to provide loans made by private lenders to eligible small businesses." *Id.* Under the Paycheck Protection Program ("PPP"), which was created under the CARES Act, employers could obtain loans from the Small Business Administration that would later be forgiven if the employer used the funds for "payroll costs . . ., mortgage interest, rent, or utilities." *Awah v. Mansfield Kaseman Health Clinic*, No. PX-21-938, 2021 WL 6197415, at *4 (D. Md. Dec. 30, 2021) (quoting *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021)).

first place to extend a PPP loan in this amount to Connie Stewart and 3 Bea's.[4] In any event, under the terms of the loan, Connie Stewart and 3 Bea's (the borrowers under the terms of the loan) promised to repay the loan in full, as required by the Note. ECF No. 29-5 at 19. The payment terms required Connie Stewart and 3 Bea's to repay the loan according to a schedule, along with interest at the rate of 1.00% per annum. *Id.* at 20. At the beginning of the loan term, repayment of principal and interest were deferred for six months, starting from one month from the date of the initial disbursement of the loan. *Id.* Thereafter, Connie Stewart and 3 Bea's were required to make 18 monthly consecutive principal and interest payments (beginning seven months from the date of the initial disbursement of the loan). *Id.* Finally, Connie Stewart and 3 Bea's were required to make a final payment for all principal, interest, and other amounts not yet paid on the loan. *Id.*

There is no dispute about the authenticity of the loan documents appended to the Motion at Exhibit No. 1 (ECF No. 29-5). The loan documents include an Electronic Record of Loan Application (*id.* at 2-6), a PPP Borrower Application Form (*id.* at 7-10), a notification of loan approval (*id.* at 11), a Resolution to Borrow form (*id.* at 12-13), an SBA Form 1050 Settlement Sheet (*id.* at 14-15), a privacy disclosure (*id.* at 16-17), an Authorization to Release Information (*id.* at 18), and a promissory note ("Note") (*id.* at 19-24).

The Note defines when a borrower will be considered to be in default:

If Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:
A. Fails to do anything required by this Note and other Loan Documents;
B. Defaults on any other loan with Lender;
C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

---

[4] But assuming that Plaintiff made an error in offering a loan in this amount to 3 Bea's and Connie Stewart, this does not excuse the apparently false certifications that 3 Bea's and Connie Stewart made throughout the loan documents.

4

      E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
      F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
      G.  Fails to pay any taxes when due;
      H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;
      I.  Has a receiver or liquidator appointed for any part of their business or property;
      J.  Makes an assignment for the benefit of creditors;
      K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
      L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
      M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

ECF No. 29-5 at 21.

When a borrower is in default, the Note allows Plaintiff, without notice or demand and without giving up any of its rights, to:

      A.  Require immediate payment of all amounts owing under this Note;
      B.  Collect all amounts owing from any Borrower or Guarantor;
      C.  File suit and obtain judgment;
      D.  Take possession of any Collateral; or
      E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

*Id.*

The Note provides that "[a]ll individuals and entities signing this Note are jointly and severally liable." *Id.* at 23.

There is no dispute that Connie Stewart signed the relevant loan documents, including the Note. *See* ECF No. 38-2 at ¶ 13. There is also no dispute that Connie Stewart and 3 Bea's received a loan disbursement in the amount of $1,706,117. *Id.* ¶ 17. And there is no dispute that Connie Stewart knew that she received a disbursement in the amount of $1,706,117, an amount she considered shocking. *Id.* ¶ 15. Finally, there is no dispute that Connie Stewart and 3 Bea's have

defaulted on the Note by failing to make the monthly installment payments as required by the Note.

      **C.    Count I: Breach of Contract**

In Count One, Plaintiff claims that Defendants are liable for breach of contract. Plaintiff alleges that in May 2020 it funded a PPP loan to 3 Bea's and Connie Stewart in the amount of $1,706,711. ECF No. 9 ¶ 34. 3 Bea's and Connie Stewart executed a Note to evidence their indebtedness for full amount of the loan. *Id.* ¶ 35. 3 Bea's and Connie Stewart are jointly and severally liable under the Note. *Id.* Plaintiff alleges that 3 Bea's and Connie Stewart are in default under the Note because they (1) made false statements in connection with the application for the loan and (2) failed to deliver payments of principal and interest when they became due.[5] *Id.* ¶¶ 36-37. Plaintiff alleges that it has the right to require immediate payment of all amounts owing under the Note and that it has demanded repayment to no avail. *Id.* ¶¶ 39, 41-42. Plaintiff has recovered only $4,717.53 toward 3 Bea's and Connie Stewart's debt under the Note. *Id.* ¶ 39. Plaintiff seeks judgment against 3 Bea's and Connie Stewart for breach of contract, an award of damages in the amount of $1,701,399.47, plus one percent interest, reasonable attorney's fees and costs, all late charges and related fees under the loan documents, and prejudgment interest. *Id.* ¶ 43.

The Court finds that Connie Stewart and 3 Bea's signed the Note and that Plaintiff disbursed a loan to them in the amount of $1,706,711 under the Note. The Court finds that the Note is a valid contract that is definite in its terms and supported by mutual assent and consideration. The Court also finds that all material terms of the Note are clear and unambiguous. Because Connie Stewart and 3 Bea's have not made the required monthly installment payments due under the Note, they have

---

[5] The Court does not reach the issue of whether Connie Stewart and 3 Bea's are in default under the Note for making material misrepresentations or false certifications in the various loan documents. The Court also does not reach the issue of whether Connie Stewart and 3 Bea's violated the PPP loan rules (although they obviously did) because it is not material to the Court's ruling on the pending Motion.

breached their contract with Plaintiff. Under the Note, Plaintiff has a right to demand immediate payment of all amounts due under the Note, and is also entitled to judgment for what is owed. Because Connie Stewart and 3 Bea's are in breach of the Note, the Court will enter summary judgment in favor of Plaintiff on its breach of contract claim (Count One).

###    D.    Count Two: Money Had and Received

Plaintiff alleges that it is entitled to recovery under a theory of "money had and received." ECF Nos. 9 ¶¶ 44-49; 29-2 at 17-18. Plaintiff argues that "3 Bea's and Connie Stewart have come into possession of money that they had no right to." ECF No. 29-2 at 17. Plaintiff states that 3 Bea's and Connie Stewart certified false statements in the loan documents and this resulted in Plaintiff extending a PPP loan for an amount that 3 Bea's and Connie Stewart were unqualified to receive. *Id.* at 18. Because the money at issue in this claim is the same money that is at issue in Plaintiff's breach of contract claim (Count One), Plaintiff is not entitled to judgment on a theory of money had and received. Judge Grimm has explained:

> The Maryland [Supreme Court] has characterized money-had-and-received claims as unjust enrichment claims rooted in a quasi-contract theory. *See Alternatives Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*, 843 A.2d 252, 288, 290 (Md. 2004). A quasi-contract is a "[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where the circumstances are such that justice warrants a recovery as though there had been a promise." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000) (quoting Black's Law Dictionary 324 (6th ed. 1990)). Certainly, Maryland courts have recognized exceptions to the general rule that a party cannot recover under a quasi-contractual theory when there is an express contract, noting that other jurisdictions have permitted recovery under these theories "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter." *Id.* at 608–09 (internal citations omitted); *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 772 n.9 (Md. 2004) (same). But where, as here, the party prevails on a breach of contract claim pursuant to which it is entitled to the same damages it could recover on its money-had-and-received claim, there is no need to resort to the alternative ground. *See Dashiell*, 747 A.2d at 609 ("There has been no evidence presented that would lead us to believe that an exception to the general rule is warranted. The subject matter of respondent's claim-recovery of money for work performed on the Detention

Center-is covered specifically by several valid and enforceable provisions of the written contract between the parties."); *see also Capital Funding Grp., Inc., v. Credit Suisse Securities (USA) LLC*, No. 81, Sept. Term 2014, 2015 WL 9239133, *8–10 (App. Ct. Md. Dec. 16, 2015) ("once the jury found . . . an enforceable agreement and a breach of that agreement, [the] quasi-contractual unjust enrichment remedy was precluded by the terms of the express contract between the parties. The circuit court aptly noted that [Plaintiff's] articulation of a breach of contract exception would 'consume[ ] the rule of Dashiell.'") (internal citations omitted).

Accordingly, the Motion will be denied as to Plaintiff's money had and received claim (Count Two).[6] *See id.*

### E. Count Three: Unjust Enrichment

In Count Three, Plaintiff seeks recovery under an unjust enrichment theory. ECF Nos. 9 ¶¶ 50-54; 29-2 at 15-18. Plaintiff argues that Defendants have received benefits (the PPP loan proceeds) under circumstances that would make it inequitable for them to keep the benefits. *Id.* "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Dashiell*, 358 Md. at 96 (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (1998)); *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants*, 243 Md. App. 62, 70 (2019). "An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing." *Id.* (internal quotation marks omitted).

There are four narrow exceptions to the general rule that a party may not bring an unjust enrichment claim where the subject matter is covered by an express contract: "when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the

---

[6] Pursuant to Rule 56(f), the Court gives notice that it will enter judgment in favor of Defendants on all counts for which the Motion is denied unless Plaintiff moves for the voluntary dismissal of those counts within seven days of the date of this Memorandum Opinion

contract, when rescission is warranted, or when the express contract does not fully address a subject matter." *Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (quoting *Dashiell*, 358 Md. at 100). Maryland courts strongly disfavor the application of these exceptions. *Bubba Gump*, 243 Md. App. at 72 ("No reported decision applying Maryland law has ever upheld a judgment based on any of these exceptions."). Plaintiff does not maintain that any of the four exceptions noted in *Bubba Gump* apply here; it does not address the issue at all.

The Court finds that because the benefit at issue in Plaintiff's unjust enrichment claim is covered by the express contract at issue in Plaintiff's breach of contract claim (Count One), Plaintiff is not entitled to judgment on a theory of unjust enrichment. Accordingly, Motion will be denied as to Plaintiff's unjust enrichment claim (Count Three).

**F.    Count Four: Conversion**

In Count Four, Plaintiff seeks to recover the PPP loan proceeds that have not been repaid under a theory of conversion. ECF Nos. 9 ¶¶ 55-59; 29-2 at 18-20. A conversion is "any distinct ownership or dominion . . . over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004) (quotation omitted). As a general rule, "monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jasen*, 31 A.2d 957, 966 (Md. 1999). A plaintiff may, however, seek "funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction," provided that the transferred money is "sufficiently identifiable[.]" *Id.* at 966–67 (citations and quotations omitted). But, "if a defendant ... commingles it with other monies, the cash loses its specific identity." *Id.* at 967; *see also Gibbons v. Bank of Am. Corp.*, No. JFM-08-3511, 2012 WL 94569, at *9 (D. Md. 2012); *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. WMN-09-2499, 2009 WL

4738073, at *4 (D. Md. 2009). "As this Court has explained, '[e]ssentially, courts applying Maryland law have distinguished between claims seeking return of the actual, identical money, and those seeking a specific amount of money.'" *Mahoney v. iProcess Online, Inc.*, No. JKB-22-0127, 2022 WL 17585160, at *4 (D. Md. Dec. 12, 2022) (quoting *Nash v. Montgomery Cnty., Md.*, No. GJH-20-1138, 2021 WL 1222874, at *8 (D. Md. Mar. 31, 2021)).

Here, it is undisputed that Connie Stewart commingled the proceeds of the PPP loan with other monies. As a result, the proceeds of the loan have lost their "specific identity." Plaintiff does not address Defendants' argument (ECF No. 38-1 at 9-10) or the governing law on this point. Because Plaintiff has not shown that it is entitled to judgment as a matter of law, the Court will deny the Motion as to Plaintiff's conversion claim (Count Four).

### G. Counts Five (Fraud/Misrepresentation) and Six (Negligent Misrepresentation)

Plaintiff's claims in Counts Five and Six are related. In Count Five, Plaintiff claims that 3 Bea's and Connie Stewart made false misrepresentations to Plaintiff (regarding their eligibility for a PPP loan in the amount of $1,706,117), that 3 Bea's and Connie Stewart either knew of the falsity of their misrepresentations or made them with reckless indifference of their truth, that the misrepresentations were made to defraud Plaintiff, that Plaintiff had a right to rely on the misrepresentations, and that Plaintiff was injured. ECF Nos. 9 ¶¶ 60-73; 29-2 at 20-25. In Count Six, Plaintiff claims that 3 Bea's and Connie Stewart made a false statement to Plaintiff while under a duty of care, that 3 Bea's and Connie Stewart intended that their false statement be acted on by Plaintiff, that 3 Bea's and Connie Stewart knew that Plaintiff's reliance on their false statement would cause loss or injury, that Plaintiff justifiably took action in reliance on the false statement, and that Plaintiff was injured by the negligence of 3 Bea's and Connie Stewart. ECF Nos. 9 ¶¶ 74-78; 29-2 at 25-27.

Maryland's Supreme Court has "appeared to endorse a fact-based inquiry instead of a per se rule," with respect to whether, in an action for fraud, reliance on a misrepresentation is unreasonable where the misrepresentation is directly contradicted by a contractual term. *Price v. Berman's Auto., Inc., No.* 14-763-JMC, 2015 WL 5720429, at *5 (D. Md. Sept. 28, 2015) (citing *James v. Goldberg*, 261 A.2d 753 (Md. 1970)); *see also Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990) (explaining that "one may not reasonably rely upon an oral statement when he has in his possession a contrary statement in writing" and even if a party "did not know which of the statements were true, they could not act reasonably in relying on one over the other")

Plaintiff's claims fail on both counts for the same reason: Plaintiff had no right to rely on the misrepresentation of 3 Bea's and Connie Stewart that they were eligible for a PPP loan in the amount of $1,706,117. As Plaintiff repeats throughout its briefing, and as is shown in the loan documents, "[a]t the beginning of the application the loan amount was stated to be $20,680 based on the monthly payroll of $8,272 for a total of 8 employees, but elsewhere in several places the amount was misrepresented to be $1,706,117." ECF No. 29-1 at 2. Plaintiff acknowledges that the maximum PPP loan amount was calculated based on 3 Bea's stated average monthly payroll. *Id.* Plaintiff knew at all relevant times that the loan application stated that 3 Bea's had an average monthly payroll of $8,272, and that it was thus entitled to a maximum PPP loan in the amount of $20,680. Plaintiff had no right to rely on the inconsistent and false certifications elsewhere in the loan application package that 3 Bea's and Connie Stewart were eligible for a loan in the amount of $1,706,117. *See Foremost Guar. Corp.*, 910 F.2d at 126. Accordingly, even assuming that Plaintiff could establish all other elements of Counts Five and Six, it has not shown that it had a right to rely, or that it justifiably relied, on the misrepresentations made by 3 Bea's and Connie

11

Stewart. The Motion is denied as to Plaintiff's claims for fraud/misrepresentation (Count Five) and negligent misrepresentation (Count Six).

      **H.**     **Count Seven: Fraudulent Conveyance**

In Count Seven, Plaintiff alleges that it is entitled to relief under a theory of fraudulent conveyance. The Maryland Uniform Fraudulent Conveyance Act, Md. Code, Com. Law §§ 15–201 *et seq.* ("MUFCA") prohibits fraudulent conveyances of assets to avoid liability. *Van Croft v. Louis*, No. PX-21-3084, 2023 WL 4421571, at *3 (D. Md. July 10, 2023) (citing *Meese v. Meese*, 212 Md. App. 359, 369 (2013)). Section 15-204 of the MUFCA provides: "Every conveyance made . . . by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made . . . without a fair consideration." Md. Code, Com. Law § 15-204. "Maryland courts have carved this provision into its constituent elements, holding that a fraudulent conveyance under § 15-204 requires: (1) a conveyance, (2) the debtor either already is insolvent, or will be made insolvent by this conveyance; (3) the existence of a debtor-creditor relationship; and (4) lack of fair consideration." *Brooke Grove Found., Inc. v. Bradford*, No. PWG-17-3364, 2018 WL 6417082, at *3 (D. Md. Dec. 4, 2018) (internal quotation marks omitted).

For purposes of the MUFCA, a "conveyance" includes "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Md. Code, Com. Law § 15-201(c). A debtor is "insolvent" under § 15-204 "if the present fair market value of his assets is less than the amount required to pay his probable liability on his existing debts as they become absolute and matured." And consideration is considered "fair" where it is given "[i]n exchange for the property . . ., as a fair equivalent for it and in good faith." *Brooke Grove*, 2018 WL 6417082, at *4 (quoting Md. Code,

Com. Law § 15-203(1)). "Proof of the absence of any consideration whatsoever . . . places significant burdens upon the transferee to establish the validity of the transfer." *Id.* (quoting *In re Colandrea*, 17 B.R. 568, 579 (Bankr. D. Md. 1982)).

### 1.      Liability

The parties agree that Connie Stewart purchased real property located in Brandywine, Maryland ("Brandywine Property") using $749,000 of the 3 Bea's PPP loan proceeds on or about September 25, 2020. *See* ECF No. 29-2 at 28 (citing deed and related purchase documents and Connie Stewart's discovery responses). The Brandywine Property was titled in the name of Connie Stewart. ECF No. 29-13 at 2. Property records indicate that the Brandywine Property was to be Connie Stewart's principal residence. *Id.* at 7. On or about December 4, 2020, Connie Stewart conveyed the Brandywine Property to her sons, Burton Sherbert and David Stewart, Jr. for no consideration. *See* ECF Nos. 29-2 at 29; 29-14. On or about August 30, 2021, David Stewart, Jr. and Burton Sherbert conveyed the Brandywine Property to David Stewart, Jr. and Connie Stewart for no consideration. See ECF Nos. 29-2 at 29; 29-15.

Plaintiff argues that various "badges of fraud" accompanied the transfer of the Brandywine Property from Connie Stewart to her sons, and then back to herself and David Stewart, Jr. *See* ECF No. 29-2 at 29-30. But under the circumstances here, where the conveyances were made without fair consideration, and where they will render a debtor insolvent, the MUFCA considers the conveyances to be fraudulent as to the relevant creditors "without regard to [Defendants'] actual intent." Md. Code, Com. Law § 15-204.

There is no dispute that Connie Stewart made the conveyance of the Brandywine Property to Burton Sherbert and David Stewart, Jr. on or about December 4, 2020, for no consideration, which satisfies the first and fourth elements of § 15-204. There is also no dispute that by conveying

13

the Brandywine Property to her sons for no consideration, Connie Stewart would be rendered insolvent because she would no longer be able to repay the PPP loan to Plaintiff, which satisfies the second element. *See* § 15-202(a) ("A person is insolvent if the present fair market value of his assets is less than the amount required to pay his probable liability on his existing debts as they become absolute and matured."); *id.* And there is no dispute over the third element, the existence of a debtor-creditor relationship between Plaintiff and Connie Stewart. *Id.* Plaintiff is therefore entitled to summary judgment on its fraudulent conveyance claim (Count Seven).

Alternatively, Plaintiff is entitled to summary judgment on this claim because Plaintiff has shown that Connie Stewart made the December 4, 2020 conveyance of the Brandywine Property with the intent to defraud. *See* Md. Code, Com. Law § 15-207 ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."). Plaintiff notes that Maryland courts have recognized several "badges of fraud" that indicate an intent to defraud under the MUFCA. ECF No. 29-2 at 28 (citing *Wellcraft Marine Corp. v. Roeder*, 314 Md. 186, 190 (1988)). These "badges of fraud" include:

1. insolvency or indebtedness of the transferor;
2. lack of consideration for the conveyance;
3. relationship between the transferor and transferee;
4. the pendency or threat of litigation;
5. secrecy or concealment;
6. departure from the usual means of business;
7. transfer of the debtor's entire estate;
8. reservation of benefit to the transferor;
9. retention by the debtor of possession of the property.

*Id.*

Plaintiff argues that a finding that Connie Stewart made an intentionally fraudulent conveyance is warranted in light of the following undisputed facts: "the transfers were made for

no consideration, they were made outside the ordinary course of business, they were made among family members, and they were made in the presence of substantial indebtedness of 3 Bea's to Cross River." ECF No. 29-2 at 29. In response, Defendants argue that there is a dispute of fact that precludes entry of summary judgment on this claim. They assert that the "title of the [Brandywine Property] was a matter of convenience," that it was "not done in secret or concealed in any way" but is rather a "matter of public record." ECF No. 38-1 at 12. They also note that Connie Stewart "was concerned with her health at the time the [Brandywine Property] was titled due to her cancer that had returned," and that "she wanted her son to be on title to the home." *Id.* In support of their argument, Defendants cite the Affidavit of Connie Stewart (ECF No. 38-2 at 2-4). But this Affidavit makes only sparse and general statements about the Brandywine Property. The Affidavit states that Connie Stewart "purchased [the Brandywine Property] in order to expand 3 Bea's business." *Id.* ¶ 20. She states that "[t]he house is currently titled in [her] name along with [her] Son, David [Stewart, Jr.]." *Id.* She notes her intent, however "to use the house for the business of 3 Bea's once [she is] licensed to run the business at that location." *Id.* She also states generally that in late 2020 she learned that her cancer had returned and began treatment, which "greatly weakened [her] and slowed down the process of [her] business expansion." *Id.* ¶ 21.

Connie Stewart has presented no evidence to rebut the inference of fraud that Plaintiff has established. Her Affidavit does not address why she conveyed property that she purchased with 3 Bea's PPP loan proceeds to her sons, and then back to herself and David Stewart, Jr. (a person who is not an owner of 3 Bea's), for no consideration. To the extent that her opposition brief argues that the conveyances were done as a "matter of convenience," the Court notes that the argument of counsel is not evidence. Further, even if this were true, it is a barebones assertion that casts little light on what is at issue in this claim. And it is unclear how such titling as a "matter of convenience"

would be a defense to Plaintiff's fraudulent conveyance claim. At the time that Connie Stewart made the fraudulent conveyances, she knew that she had received a PPP loan in the amount of $1,706,117 and that Plaintiff had demanded that the loan proceeds be returned. *See* ECF Nos. 29-6; 32-4 at 8.

The Court concludes that no reasonable jury could find in Connie Stewart's favor on this claim. Plaintiff is therefore also entitled to summary judgment on its fraudulent conveyance claim under a theory of intentional fraud.

### 2. Remedy

The Court now considers the remedies available to Plaintiff in connection with its fraudulent conveyance claim. The MUFCA provides the following remedies for creditors when a fraudulent conveyance is proven:

> (a) If a conveyance or obligation is fraudulent as to a creditor whose claim has matured, the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser, may:
>
>> (1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the claim; or
>>
>> (2) Levy on or garnish the property conveyed as if the conveyance were not made.
>
> (b) In an action to have a conveyance set aside or an obligation annulled, it is not necessary as a condition to the granting of relief that the creditor first obtain judgment on the claim.
>
> (c) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation may retain the property or obligation as security for repayment.

Md. Code, Com. Law, § 15-209.

Because Defendants are in default under the Note, Plaintiff has properly demanded full repayment, and Defendants have refused to make such payment, I find that Plaintiff's claim has

matured under § 15-209. I further find that Plaintiff is entitled to have the December 4, 2020 conveyance of the Brandywine Property from Connie Stewart to Burton Sherbert and David Stewart, Jr. set aside. The subsequent conveyance of the Brandywine Property from Burton Sherbert and David Stewart, Jr. to Connie Stewart, which was also made for no fair consideration, will be rendered void.

### III.   Conclusion

For the reasons stated above, Plaintiff Cross River Bank's Motion for Summary Judgment (ECF No. 29) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to Counts One (Breach of Contract) and Seven (Fraudulent Conveyance). The Motion is denied as to Counts Two (Money Had and Received), Three (Unjust Enrichment), Four (Conversion), Five (Fraud/Misrepresentation), and Six (Negligent Misrepresentation). Pursuant to Rule 56(f), the Court gives notice that it will enter judgment in favor of Defendants on all counts for which the Motion is denied unless Plaintiff moves for the voluntary dismissal of those counts within seven days of the date of this Memorandum Opinion.

The Court has reviewed the proposed order submitted along with Plaintiff's Motion. ECF No. 29-3. It is inadequate in several respects. **First**, the proposed order does not specify the money damages to which Plaintiff is entitled for Defendants' breach of contract. Plaintiff shall submit a revised proposed order that specifies the money damages to which it is entitled (including interest, late fees, and attorney's fees, *see* Appendix B of the Court's Local Rules) through the date of the submission of the proposed order, along with a brief memorandum explaining the basis for and calculation of those damages. **Second**, the proposed order seeks to set aside the conveyance of funds used by Connie Stewart to buy the Brandywine Property on September 25, 2020. Plaintiff did not seek this relief in its Motion and it is unclear what the effect of granting such relief would

be. Plaintiff shall submit a revised proposed order that clarifies the relief it seeks, and if necessary, a brief memorandum explaining why it would be appropriate to grant such relief given the Court's ruling on the Motion. **Third**, the proposed order seeks the vesting of the Brandywine Property in the name of 3 Bea's Assisted Living, LLC. It is unclear under what authority the Court might issue such an order. Plaintiff shall explain the basis on which it seeks this relief, Plaintiff's view on whether the Court has jurisdiction to order such relief, and Plaintiff's view as to why it would not be appropriate to seek this relief in Maryland state court instead. Plaintiff's revised proposed order and supporting memorandum shall be filed within 14 days of the date of this Memorandum Opinion. Any response and reply shall be filed in accordance with Local Rule 105.2.

An accompanying Order follows.


Date: September 21, 2023                              /s/
                                                Timothy J. Sullivan
                                                Chief United States Magistrate Judge