**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| CROSS RIVER BANK | |
| | |
| Plaintiff, | Case No:   8:21-cv-3210-TJS |
| v. | |
| | |
| 3 BEA'S ASSISTED LIVING LLC, | |
| a Maryland Limited Liability Company, | |
| a/k/a THREE BEA'S ASSISTED LIVING, | |
| CONNIE STEWART, and | |
| DAVID STEWART JR., | |
| | |
| Defendants. | |

_____

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR RECONSIDERATION**

The Court properly entered summary judgment in favor of Plaintiff Cross River Bank ("Cross River") as to its Count One, Breach of Contract claim as to both 3 Bea's Assisted Living LLC ("3 Bea's") and Connie Stewart.[1]   As put forth in our summary judgment motion papers and set forth below, summary judgment for breach of contract was granted because it is clear that Defendant Connie Stewart cannot evade the responsibilities and obligations pursuant to the terms of her signed promissory note ("Note") and has set forth no valid basis for doing so.

---

[1]  The Court also properly entered summary judgment in favor of Cross River as to Count Seven (Fraudulent Conveyance), to which no request for reconsideration has been made by Defendants.

## <u>LEGAL ARGUMENT</u>

**I.    THE STANDARD FOR A MOTION FOR RECONSIDERATION WAS NOT MET OR EVEN SET FORTH IN DEFENDANTS' MOTION FOR RECONSIDERATION**

3 Bea's and Connie Stewart did not set forth the legal basis for their Motion for Reconsideration.   Because the order sought to be reconsidered is interlocutory, a motion for reconsideration, to the extent even permitted in federal court, would be governed by Fed.R.Civ.P. 54(b).[2]  "'[A] motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant."   <u>Carrero v. Farrelly</u>, 310 F.Supp. 3d 581, 584 (D. Md. 2018), <u>quoting</u> <u>Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.</u>, 142 F.Supp. 2d 676, 677 n.1 (D. Md. 2001).   Moreover, defendants should not be permitted to argue new legal theories not already before a court in the motion underlying the motion for reconsideration.   "Generally, 'motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling'" <u>McLaurin v. East Jordan Iron Works, Inc.</u>, 666 F.Supp. 2d 590, 596 (E.D.N.C. 2009), <u>quoting</u> <u>Zurich Capital Markets, Inc. v. Coglianese</u>, 383 F.Supp. 2d 1041, 1045 (E.D. Ill. 2005).

3 Bea's and Connie Stewart admit that the statute they rely upon in the instant motion was not cited in their opposition to Cross River's motion for summary judgment by their prior counsel.   The statute, Md. Code Ann., Com. Law § 3-402(b)(1), could have been addressed within the opposition to the motion for summary judgment, but it was not.   It is not appropriate for the Court to consider a statute cited for the first time on reconsideration.   Moreover, as addressed below, even if considered, the statute is inapplicable.

---

[2] Cross River has submitted a proposed final order for the Court's consideration pursuant to its directive, but it has not yet been entered; therefore the order sought to be reconsidered is interlocutory.

## II.     THE NOTE EXPRESSLY PROVIDES FOR JOINT AND SEVERAL LIABILITYAS TO 3 BEA'S AND CONNIE STEWART

Count One of Cross River's Amended Complaint specifically seeks damages for breach of the Note as to both 3 Bea's and Connie Stewart.   See plaintiff's summary judgment motion papers, ECF No. 29-9 at 8-9, Affidavit of Counsel ("Counsel Aff."), Ex. 1 Amended Complaint ("Am. Compl."), ¶¶ 33-43.   The Note expressly provides that "**All individuals and entities signing this Note are jointly and severally liable**."   See ECF No. 29-5 at 23, Affidavit of Cross River ("Cross River Aff."), Ex. 1, U.S. Small Business Administration Note ("Note"), p. 5, ¶ 9(A) (copy attached for convenient reference).

In addition to the foregoing joint and several liability clause, the Note at Page 1 contains a table which provides succinct and clear information about the loan.   See ECF No. 29-5 at 19, Cross River Aff., Ex. 1, Note, p.1 (copy attached).   The table identifies "CONNIE STEWART" in all capital letters as "Borrower."   See id.   The table identifies 3 Bea's as "Operating Company."[3]   Connie Stewart has expressly admitted she signed the Note.   In her Answer to Cross River's Amended Complaint, she stated "Defendants admit that Ms. Stewart signed a U.S. Small Business Administration Note . . . "   See ECF No. 29-10 at 4, Counsel Aff., Ex. 2, Answer to Amended Complaint ("Answer"), ¶ 18.   In her Answer to Cross River's Interrogatory No. 20, she stated "Ms. Stewart acknowledges that she signed the U.S. Small Business Administration Note.   When she signed the document, she acknowledged certain statements and certified as to those statements with her signature."   See ECF No. 29-11 at 10, Counsel Aff., Ex. 3, Connie Stewart's Answers to Cross River Bank's Interrogatories ("Connie Stewart's Interrogatory Answers"), Answer No. 20.

---

[3] Cross River asserts that 3 Bea's also borrowed the funds which are the subject of this litigation.   3 Bea's and Connie Stewart are jointly and severally liable pursuant to the express terms of the Note.

Connie Stewart, as borrower, made other promises within the Note.   Paragraph 1 of the Note, titled "PROMISE TO PAY:" in all capital letters states "[i]n return for the Loan, Borrower promises to pay to the order of Lender the amount of one million, seven hundred six thousand, one hundred seventeen Dollars, interest on the unpaid principal balance, and all other amounts required by this Note."   See ECF No. 29-5 at 19, Cross River Aff., Ex. 1, Note, p.1, ¶ 1 (copy attached).   The loan amount ($1,706,117) is spelled out in letters as well as numerically.   In addition to numerous other provisions set forth in the Note, Paragraph 9, titled "GENERAL PROVISIONS:" states "A.   All individuals and entities signing this Note are jointly and severally liable."   See id. at 23, Cross River Aff., Ex. 1, Note, p.5, ¶ 9(A) (copy attached).   The Court appropriately described Connie Stewart as a "borrower" pursuant to the Note in its well-reasoned September 21, 2023 Memorandum Opinion, and appropriately found she is jointly and severally liable for breach of the Note along with 3 Bea's.

"A contract is not ambiguous simply because, in litigation, the parties offer different meanings to the language.   It is for the court, supposing itself to be that reasonably prudent person, to determine whether the language is susceptible of more than one meaning."   Diamond Point Plaza Ltd., P'ship v. Wells Fargo Bank, N.A., 400 Md. 718, 751 (Md. 2007).   Maryland follows the objective law of contracts.   See General Motors Acceptance Corp. v. Daniels, 303 Md. 254, 261 (Md. 1985), citing Aetna Casualty & Surety Co. v. Insurance Commissioner, 293 Md. 409, 420 (1982).   See also Myers v. Kayhoe, 391 Md. 188, 198 (2006).

> A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.   In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed.

General Motors, supra, 293 Md. at 261.

Under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." CTI/DC, Inc. v. Selective Ins. Co. of America, 392 F.3d 114, 123 (4th Cir. 2004). The elements of a breach of contract are (1) a contractual obligation and (2) a material breach of that obligation. See Taylor v. NationsBank, N.A., 365 Md. 166, 175 (Md. 2001). A breach is material where it renders any subsequent performance "different in substance from that which was contracted for," or where it alters the purpose of the contract in a vital way. See Jay Dee/Mole Joint Venture v. Mayor of Baltimore, 725 F.Supp. 2d 513, 516 (D.Md. 2010); Barufaldi v. Ocean City Chamber of Commerce, 196 Md. App. 1, 23 (Md. Ct. Spec. App. 2010). A "promissory note is, as between the parties to it, a contract, to which the basic rules of contract construction apply." Jenkins v. Karlton, 329 Md. 510, 525 (Md. 1993).

Connie Stewart on behalf of herself and 3 Bea's signed the Note in the amount of $1,706,117 on May 5, 2020. See ECF No. 29-5 at 24, Cross River Aff., Ex. 1, Note, p.6 (copy attached). Connie Stewart and 3 Bea's admit signing the Note in their Answer, and Connie Stewart admits signing the Note in her Answer to Cross River's Interrogatory No. 20. See ECF No. 29-10 at 4, Counsel Aff., Ex. 2, Answer, ¶ 18, and ECF No. 29-11 at 10, Counsel Aff., Ex. 3, Connie Stewart's Interrogatory Answers, Answer No. 20.[4]

As established in plaintiff's summary judgment motion, in reliance on the Note, Cross River wired $1,706,117 into 3 Bea's Bank of America account x1025 on May 7, 2020. See ECF No. 29-12 at 14, Counsel Aff., Ex. 4, relevant portion of 3 Bea's Assisted Living, LLC account

---

[4] Connie Stewart and 3 Bea's also admitted signing the other loan documents, including the Borrower Application Form, the Resolution to Borrow, the Settlement Sheet, as well as the Note. See ECF No. 29-10 at 3-4, Counsel Aff., Ex. 2, Answer, ¶¶ 14, 15, 17 and 18, and ECF No. 29-11 at 8-10, Counsel Aff., Ex. 3, Connie Stewart's Interrogatory Answers, Answer Nos. 16, 17, 18, 19 and 20.

x:1025 May 2020 bank statement.    3 Bea's and Connie Stewart admitted that Cross River funded

the loan in the amount of $1,706,117.    See ECF No. 29-9 at 7, Counsel Aff., Ex. 1, Am. Compl.,

¶¶ 23-24 and ECF No. 29-10 at 5, Counsel Aff., Ex. 2, Answer, ¶¶ 23-24.    Mutual assent (offer

and acceptance), an agreement definite in terms, and consideration (Connie Stewart's and 3 Bea's

execution of the Note in exchange for the funds) were all present to create a contractual obligation.

As put forth in plaintiff's summary judgment motion papers, Connie Stewart made other

significant admissions as well that speak to her status as borrower and her obligation to repay the

loan proceeds.    She admitted she has not made payments pursuant to the Note.    See ECF No. 29-

10 at 6, Counsel Aff., Ex. 2, Answer, ¶ 39.    She admitted receipt of funds in the amount of

$1,706,711 by wire transfer.    See id. at 5-6, Counsel Aff., Ex. 2, Answer, ¶¶ 23 and 34.    As made

clear by the bank records, she conducted herself as borrower because on the very date the funds

were wired into 3 Bea's primary bank account x1025, she appropriated $1,500,000 of the funds

directly to herself, to an entity she controlled, and to her son in a series of large transfers done very

quickly.    These large transfers, certainly not permissible under the Small Business Administration

Paycheck Protection Program ("PPP") regulations, further demonstrate that Connie Stewart

immediately took control of the funds.    On May 7, 2020, Connie Stewart took $400,000 in the

form of two large cashier's checks issued to "Connie B. Stewart": one in the amount of $250,000

(Cashier's Check No. 1151807631) and the other in the amount of $150,000 (Cashier's Check No.

1151807630); also on May 7, 2020 she transferred $250,000 of the loan funds out of 3 Bea's

account x1025 to her own personal bank account x1125 in the name of "Connie B. Stewart"; on

the same date she transferred $750,000 out of 3 Bea's account x1025 to Diane's Plea, Cure Cancer

Foundation Inc.'s ("Diane's Plea") bank account x1091 in three separate transfers of $250,000,

$400,000, and $100,000; and also on May 7, 2020 she transferred $100,000 from 3 Bea's account

6

x1025 to her son, Burton S. Sherbert's bank account x4724.   See ECF No. 29-12 at 15 and 16-18, Counsel Aff., Ex. 4, showing $400,000 withdrawn from 3 Bea's account x1025, copies of Cashier's Check No. 1151807631 in the amount of $250,000, Cashier's Check No. 1151807630 in the amount of $150,000, and the debit memo showing $400,000 withdrawn; ECF No. 29-12 at 14 and 21, Counsel Aff., Ex. 4, showing $250,000 transferred out of 3 Bea's account x1025 into Connie B. Stewart's account x1125; ECF No. 29-12 at 14-15 and 24, Counsel Aff., Ex. 4, showing 250,000, $400,000, and $100,000 transferred out of 3 Bea's account x1025 into Diane's Plea's account x1091; and ECF No. 29-12 at 15 and 27, Counsel Aff., Ex. 4, showing $100,000 transferred out of 3 Bea's account x1025 into Burton S. Sherbert's account x4724.[5]   Connie Stewart conducted herself as a borrower.   She treated the funds as her own to dispose of as she wished.

## III.   THE MARYLAND COMMERCIAL CODE SECTION 3-402(b)(1) IS NOT CONTROLLING LAW IN THIS CASE

3 Bea's and Connie Stewart are incorrect in asserting that Md. Code Ann., Com. Law § 3-402(b)(1) is applicable because the provision only applies to the signature of a "representative."[6]   In the Note, Connie Stewart is designated very clearly and boldly as the borrower; therefore her signature was not made as a representative of 3 Bea's only, but also as

---

[5] Connie Stewart controlled Diane's Plea: she is listed as Diane's Plea's resident agent and her former home address appears on Diane's Plea's bank statements.   See ECF No. 29-12 at 22, Counsel Aff., Ex. 4, showing first page of Diane's Plea's bank statement based in Saint Leonard, Maryland, and ECF No. 29-16 at 2, Diane's Plea Entity Status Report.   Burton S. Sherbert is obviously a very close relative of Connie Stewart.

[6] In Md. Commercial Law Code Ann. Title 3, definitions are contained in Md. Code Ann., Com. Law § 3-103. "Representative" is not defined in that section.   However, Md. Code Ann., Com. Law § 3-103(d) states "[i]n addition, Title 1 contains general definitions . . . "   In Md. Code Ann., Com. Law § 1-201(b)(33), "representative" is defined as "a person empowered to act for another, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate."   See Md. Code Ann., Com. Law § 1-201(b)(33).

the borrower herself.   The Note clearly and boldly designates joint and several liability as to "all individuals and entities signing this Note."   The Note is therefore clear and unambiguous.[7]

However, Md. Code Ann., Com. Law § 3-402(b)(1) cited and relied upon by 3 Bea's and Connie Stewart sets forth at least three thresholds that must be met before it applies, none of which was met.   As a result, it does not apply because it only applies where a representative signs an instrument, not when a represented person signs.   As Connie Stewart was the designated borrower pursuant to the Note, she was a represented person when she signed, not merely a representative.

In addition, the statutory language in paragraph (b) expressly limits its applicability to only those situations in which (a) a representative signs in the name of the representative to an instrument; and (b) the signature is an authorized signature of the represented person.   See Md. Code Ann., Com. Law § 3-402(b).[8]   There is yet another limit to applicability (or threshold) set forth in sub-section (b)(1), namely "[i]f the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument."   See Md. Code Ann., Com. Law § 3-402(b)(1).

As stated, the situation does not meet the threshold set forth in Md. Code Ann., Com. Law § 3-402(b) because Connie Stewart signed as a represented person herself, not merely as a representative, because she was the designated borrower in the Note.   See Md. Code Ann., Com.

---

[7] Connie Stewart also admitted in her Answer to Interrogatory No. 20 that she "acknowledges that she signed the U.S. Small Business Administration Note.   When she signed the document, she acknowledged certain statements and certified as to those statements with her signature."   See ECF No. 29-11 at 10, Counsel Aff., Ex. 3, Connie Stewart's Interrogatory Answers, Answer No. 20.   Among those statements she referenced certifying with her signature was the statement: "A. All individuals and entities signing this Note are jointly and severally liable."   See ECF No. 29-5 at 23, Cross River Aff., Ex. 1, Note, p.5, ¶ 9(A) (copy attached).   See discussion above.

[8] "Represented Person" is not defined in either Md. Commercial Law Code Ann. Title 3 or Title 1.   "Person" is defined as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity."   See Md. Code Ann., Com. Law § 1-201(b)(27).

Law § 3-402(b).[9]   She also signed certifying joint and several liability, as she admitted in her answer to Interrogatory No. 20 and in ¶ 18 of her Answer to Cross River's Amended Complaint.[10]   Not only are the threshold requirements of the statute not met, but the primary requirement in the specific provision relied upon by 3 Bea's and Connie Stewart that "the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument" is not met either.   See Md. Code Ann., Com. Law § 3-402(b)(1).   The form of the signature does not indicate that Connie Stewart only signed as a mere representative of 3 Bea's; she signed as a represented person as well.   Accordingly the "form of the signature" is not "unambiguous" in that respect and the statute is inapplicable to bar liability on the part of Connie Stewart for breach of the Note.

3 Bea's and Connie Stewart's reliance on Lanier v. Bank of Virginia – Potomac, 39 Md.App. 589, 595 (1978) is misplaced.   In Lanier, the Court of Special Appeals upheld the motion court's decision that the president of a company who executed a promissory note for a loan to the company was personally responsible for repayment of the note.   The bank sued both the company and the president of the company individually.   Lanier, supra, 39 Md.App. at 589-594, 596-597.   The quotation from Lanier used by 3 Bea's and Connie Stewart actually applied to an earlier case analyzed in the Lanier opinion decided prior to the adoption of the language of the Uniform Commercial Code in Maryland, which concerned the situation where an officer of a corporation signed a promissory note with the addition of his official title but without the name

---

[9] As discussed in detail below, the words "Three Bea's Assisted Living" appear significantly above (and not on) the line to the left of the words "Borrower", and Connie Stewart's signature appears immediately below the line to the left of the word "Borrower".

[10] Cross River asserts that 3 Bea's was also bound by her signature on the Note.

of the corporation or a designation of whom he was acting for as a representative.   See Belmont Dairy Co. v. Thrasher, 124 Md. 320, 327-329 (1914).

Please note that defense counsel's retyping of and characterization of the electronic signature as it appears on Page 6 of the actual Note is incorrect.   See ECF No. 29-5 at 24, Cross River Aff., Ex. 1, Note, p.6 (copy attached).   In addition, contrary to what is stated in defendants' motion, at the time of the loan (May 2020), Connie Stewart resided in Saint Leonard, Maryland, not Brandywine, Maryland, which she purchased with the loan funds in September 2020.   See Defendants' Brief at P. 4, n. 5, in which they state that Connie Stewart resided in Brandywine, Maryland at the time of the loan.   See ECF 29-5 at 3, Cross River Aff., Ex. 1, Loan Application, and ECF No. 29-11 at 6, Counsel Aff., Ex. 3, Connie Stewart's Interrogatory Answers, Answer No. 5.

As set forth in detail above, Connie Stewart signed the Note as a designated borrower, and not merely as a representative of 3 Bea's.   She also certified that she agreed "[a]ll individuals and entities signing this Note are jointly and severally liable."   See ECF No. 29-5 at 23, Cross River Aff., Ex. 1, Note, p.5, ¶ 9(A) (copy attached).   Even if the statute somehow applied, which it does not, by signing she specifically agreed that all individuals and entities signing the Note are jointly and severally liable.   The Note, the relevant contract, is unambiguous.

Maryland law follows the objective law of contracts.   It holds that "when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed."   General Motors, supra, 293 Md. at 261.   "A contract is not ambiguous simply because, in litigation, the parties offer different meanings to the language."   Diamond Point, supra, 400 Md. at 751.   A "promissory note is, as between the parties

to it, a contract, to which the basic rules of contract construction apply."   Jenkins v. Karlton, *supra*, 329 Md. at 525.

Yet 3 Bea's and Connie Stewart attempt to insert language from the loan application, language from the Resolution to Borrow, and language from the SBA Settlement Sheet to attempt to muddy the waters and avoid personal liability as to Connie Stewart on the Note.   See ECF 29-5 at 7-10, 12-13, and 14-15, Cross River Aff., Ex. 1, Loan Application, Resolution to Borrow, and SBA Settlement Sheet.   It is respectfully submitted that the Court limit its examination to the Note itself, as that is the instrument sued upon.   Nevertheless, Connie Stewart signed the Settlement Sheet as the "Borrower."   See id. at 15, Cross River Aff., Ex. 1 Settlement Sheet.   As stated above in detail, the Note is unambiguous, as well as any other loan documents, and both 3 Bea's and Connie Stewart are jointly and severally liable for payment for amounts due under the Note, as rightfully set forth in the Court's Opinion.

3 Bea's and Connie Stewart's argument that any ambiguities concerning the "bank's documents" must be construed against the bank, as the drafter, is inapplicable here pursuant to the case it cited, L & H Enterprises v. Allied Bldg., 88 Md. App. 642, 650 (1991), quoting King v. Bankerd, 303 Md. 98, 106 (1985).   The Note itself is unambiguous.   It would be improper for the Court to substitute language found in either or all of the loan application, the Resolution to Borrow, and the SBA Settlement Sheet for the clear language of the Note.   In   L & H Enterprises, the Court specifically addressed one particular contract, not many contracts, namely a standard credit application that was alleged to have contained a personal guaranty clause that was ambiguous as to personal liability of the corporate officers.   L & H Enterprises, *supra*, 88 Md. App. at 650.   It is notable that even the other referenced document, the SBA Settlement Sheet, identifies Connie Stewart as the borrower.

## CONCLUSION

It is respectfully requested that the Court deny 3 Bea's and Connie Stewart's Motion for Reconsideration for all of the reasons set forth above and in our summary judgment motion papers.

Dated:   October 18, 2023

/s/   Blake W. Frieman
Blake W. Frieman, MD. Fed. No. 20959
Bean, Kinney & Korman, P.C.
2311 Wilson Blvd., Suite 500
Arlington, VA 22201
Tel: 703.525.4000 | Fax: 703.525.2207
bfrieman@beankinney.com

/s/   *Jonathan J. Lerner*
JONATHAN J. LERNER, ESQ.
*Pro Hac Vice*
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel: 973.403.9200 | Fax: 973.364.1403
JLerner@starrgern.com

*ATTORNEYS FOR CROSS RIVER BANK*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2023, I electronically filed the foregoing using the CM/ECF system, thus causing an electronic copy to be served upon all registered users in this case.

/s/ *Jonathan J. Lerner*
Jonathan J. Lerner

Case 8:21-cv-03210-TJS   Document 59   Filed 10/18/23   Page 13 of 18
DocuSign Envelope ID: 2F831C31-F51D-443A-A2EA-ED7ABC9F8B6C
Case 8:21-cv-03210-TJS   Document 29-5   Filed 11/11/22   Page 19 of 24

 U.S. Small Business
Administration

**NOTE**

| SBA Loan# | [REDACTED]7309 |
|---|---|
| SBA Loan Name | Three Bea's Assisted Living |
| Date | 04/30/2020 |
| Loan Amount | 1706117 |
| Interest Rate | 1% per annum |
| Borrower | CONNIE STEWART |
| Operating Company | Three Bea's Assisted Living |
| Lender | Cross River Bank |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of
    one million, seven hundred six thousand, one hundred seventeen

    Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

DocuSign Envelope ID: 2F831C31-F510-443A-A25A-ED7A8C9F8B6C
Case 8:21-cv-03210-TJS   Document 29-5   Filed 11/11/22   Page 20 of 24

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are: Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances in the "Interest Calculation Method" paragraph using the interest rates described in this paragraph:

Six (6) months principal and interest deferral for the beginning one month from the date of initial disbursement with interest calculated on the unpaid principal balances using the interest rate described below; Eighteen (18) monthly consecutive principal and interest payments, beginning seven months from the date of initial disbursement, with interest calculated on the unpaid principal balances using the interest rate described below. The final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges.

The interest rate on this Note is fixed at the rate of 1.00% per annum.

The interest rate on this Note is computed on a 365/365 basis, that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

Receipt of payments must be made in U.S. dollars and must be received by Lender at:

Cross River Bank
400 Kelby Street, 14th Floor
Fort Lee, NJ 07024
Attention: Loan Servicing Department

Lender may modify these payment instructions, including changing the address for the payments, by providing updated payment instructions to the Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 3:00 PM EST on a business day, Lender will credit the Borrower's payment on the next business day.

No Prepayment Penalties are to apply.

Late Charge: If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater. This late charge shall be paid to Lender by Borrower for purpose of defraying the expense incident to the handling of the delinquent payment.

SBA Provision: When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.



SBA Form 147 (06/03/02) Version 4.1

DocuSign Envelope ID: 2F831C31-F510-443A-A2E4-ED7A8C9F8B6C
Case 8:21-cv-03210-TJS    Document 29-5    Filed 11/11/22    Page 21 of 24

4.    DEFAULT:

    Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.    Fails to do anything required by this Note and other Loan Documents;

B.    Defaults on any other loan with Lender;

C.    Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.    Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.    Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.    Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.    Fails to pay any taxes when due;

H.    Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.    Has a receiver or liquidator appointedf for any part of their business or property;

J.    Makes an assignment for the benefit of creditors;

K.    Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.    Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.    Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.


5.    LENDER'S RIGHTS IF THERE IS A DEFAULT:

    Without notice or demand and without giving up any of its rights, Lender may:

A.    Require immediate payment of all amounts owing under this Note;

B.    Collect all amounts owing from any Borrower or Guarantor;

C.    File suit and obtain judgment;

D.    Take possession of any Collateral; or

E.    Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6.    LENDER'S GENERAL POWERS:



DocuSign Envelope ID: 2F831C31-F510-443A-A2FA-ED7A8C9F8B8C
Case 8:21-cv-03210-TJS   Document 29-5   Filed 11/11/22   Page 22 of 24

Without notice and without Borrower's consent, Lender may:

DocuSign Envelope ID: 2F831C31-F510-443A-A2EA-FD7A8C9F8B6C
Case 8:21-cv-03210-TJS   Document 29-5   Filed 11/11/22   Page 23 of 24

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses.  Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.


SBA Form 147 (06/03/02) Version 4.1

DocuSign Envelope ID: 2F831C31-F510-443A-A2EA-ED7A8C9F8B6C

Case 8:21-cv-03210-TJS   Document 59   Filed 10/18/23   Page 18 of 18
Case 8:21-cv-03210-TJS   Document 29-5   Filed 11/11/22   Page 24 of 24

10. STATE-SPECIFIC PROVISIONS:

N/A

BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

Three Bea's Assisted Living

By: _Connie Stewart_____, Borrower
Name: CONNIE STEWART
Title: